## MRS. MABEL DOBSON v. O. P. DOBSON, et al.

Western Section. July 11, 1925.

Certiorari denied by Supreme Court December 12, 1925.

1. **Evidence.** Parol evidence not admissible to contradict a written instrument.

In an action seeking to set aside a deed of trust on the ground that at the time it was given there was an oral agreement that it would never be enforced, held the oral agreement could not be shown to defeat the written instrument.

T. A. Vol. I—24.

**2. Mortgage. Consideration. Pre-existing debts sufficient consideration to support a deed of trust.**

In an action to set aside a deed of trust which secured a note for $1900 given to take up a number of smaller ones, held an antecedent or pre-existing debt constitutes value and is deemed such where the instrument is payable on demand or at a future time.

**3. Principal and surety. Consideration to the principal is a sufficient consideration to sustain a trust conveyance by a surety.**

In an action by a wife to set aside a deed of trust for lack of consideration where deed of trust was given to take up a number of husband's unsecured notes, held the consideration to the principal is a sufficient consideration to sustain a trust conveyance by the surety on the faith of which the credit was obtained; and even if the conveyance were voluntary, equity would not actively interfere, at the instance of the surety as complainant to set aside the conveyance, in the absence of fraud or other ground of equity.

**4. Equity. He who comes into equity must come with clean hands.**

In an action to set aside a deed of trust on ground that at time deed of trust was given there was an oral agreement with the cashier of the bank that it would not be binding on the wife's property but was only given to deceive the bank directors and examiners, held under such circumstances party had no standing in a court of equity.

**5. Mortgages. Evidence held to show a binding deed of trust.**

Evidence held to show a valid consideration and deed of trust fairly and properly executed.

Appeal from Chancery Court, Benton County; Hon. Thos. C. Rye, Chancellor.

Affirmed and remanded.

Jos. C. Higgins, of Nashville, and C. N. Frazier, of Camden, for appellant.

S. L. Peeler, and J. F. Odle, both of Camden, for appellee.

OWEN, J. Mrs. Mabel Dobson has appealed from a decree of the chancery court of Benton county dismissing her bill and taxing her with the costs, and in said decree the cross-bill of the Peoples Bank & Trust Company, one of the defendants, was sustained, and it was granted a decree against complainant and her husband, O. P. Dobson, for the sum of $2073.50, and ten per cent attorneys fees on said sum, making a total of $2280.25. The decree also provided that cross-complainant had the right to foreclose a certain deed of trust which was executed upon thirty acres of land in Benton county, Tennessee, which land is described in complainant's bill and in the decree, to secure said indebtedness, for which the cross-complainant was granted a recovery, and in said trust deed there was also conveyed two certain horses.

The complainant excepted to the action of the court in dismissing her bill and in granting the defendant and cross-complainant any relief, prayed and was granted an appeal to this court, perfected the same, and has assigned errors herein.

Complainant's bill was filed against her husband, O. P. Dobson, the Peoples Bank & Trust Company, a banking institution located at Camden, Tennessee, and L. E. Davis. The bill was filed the 22d day of February, 1924. The property had been advertised to be sold on March 10, 1924. The substance of Mrs. Dobson's allegations in her bill are as follows: She averred in substance that she and her husband lived in Camden, Tennessee, and that she was the mother of five children and that her husband was a Tennesseean and the head of the family; that on the 6th day of February, 1924, defendant Davis claiming to be a trustee under a trust deed purporting to have been signed by herself and husband, had advertised and was about to sell two horses and some real estate in Benton county for the purpose of collecting an alleged promissory note of $1900, secured by the aforesaid deed of trust.

She averred that she did not execute the deed of trust and note for the purpose of making the same a binding obligation. On the contrary she averred that about the 10th of March, 1921, one J. M. Lockhart, cashier of the Camden Bank, informed her husband that he wanted his indebtedness to the bank, amounting to about $1900, put in better shape so as that his bank would receive the O. K. of the State Bank Examiner and that he wanted complainant and her husband to come to the bank and fill out a blank deed mortgaging complainant's property and real estate to secure this indebtedness, but that this was to be done with the distinct understanding and agreement that so far as complainant was concerned neither the note nor the deed of trust was to be considered as a binding obligation and payment enforced.

Complainant averred that she signed the note and deed of trust with the understanding that the latter was to be acknowledged before a special deputy by the name of Cuff and that said deed of trust was not to be put of record.

She further averred that the deed of trust and note were procured through fraud and deceit upon the part of the cashier; that the consideration stated was a past consideration, the same being for old debts owing by Dobson to the bank for which she was in nowise liable and that said deed of trust was not to be enforced or registered and that her property rights were not to be interferred with.

She was not aware of the registration of said instrument contrary to the agreement with Lockhart until shortly before she filed her bill. She further averred that the instrument purporting to have been acknowledged by her before A. L. Hassel was not acknowledged before him, and that this recital was untrue.

The bill prayed for process and an injunction, and for a cancelation of said trust deed. Complainant also prayed that she be declared the absolute owner of said property. A fiat for an injunc-

tion was granted by the county judge of Benton county, upon the complainant filing the oath for poor persons.

The bank and L. E. Davis filed a joint answer. They admitted the execution of the note and deed of trust as alleged, but averred that this note was the aggregate of various and sundry smaller notes which had been executed prior to the date of the large note, and that the proceeds of the several smaller notes had been credited to O. P. Dobson and complainant and that they had gotten the benefit of it, and that the deed of trust of March 10, 1921, had been executed by complainant and her husband to secure said $1900 note.

The allegations respecting the oral agreement to the effect that the deed of trust and note were never to be enforced were denied. Defendants also challenged the authority of Lockhart to enter into such an agreement.

It was admitted that complainant did not appear before Hassel, but that she did acknowledge the deed before Cuff, who was duly authorized to take an acknowledgment in the name of Hassel, the clerk.

The allegation that $1900 was for past consideration was denied, it being averred that said $1900 was a renewal of small notes and that an extension of time and the release of sureties thereon constituted a new and present consideration.

The allegation as to fraud in the procurement of note and deed of trust, and the promise not to enforce the same was denied. Defendants reaffirm the good faith of the transaction and the validity of the note and deed of trust, and charged that they were valid obligations and that the bank had the right to collect the same.

The averments as to complainant's ownership of the real estate were denied, and the Statute of Limitations were imposed as against her effort to set up the resulting trust.

The cross-bill was also filed, as heretofore stated, praying for judgment on the note executed by Mrs. Dobson and her husband, and for a foreclosure of the trust deed. The note and trust deed were made exhibits to the cross-bill. The cross-bill was answered by complainant Mabel Dobson and the defendant O. P. Dobson, her husband, denying the material allegations of said cross-bill.

With the issues thus formed, a number of depositions were taken, and the record, including evidence as shown by the depositions of various witnesses, and certain exhibits or record proof, the cause was heard and determined by Chancellor Rye, who decreed as heretofore stated.

It appears that the defendant O. P. Dobson has suffered pro confesso to be taken as to him, and that he was the chief witness for

the complainant. He had been engaged for some years in the mercantile business in a small way at Camden, Tennessee. Shortly before complainant's bill was filed O. P. Dobson filed an involuntary petition in bankruptcy. He listed cross-complainants' indebtedness, which showed that it was secured by trust deed on thirty acres of land, worth about $1900. He also listed unsecured debts amounting to $2570.03. He valued his stock of goods at $1000, horses, cows and other animals at $495, and open accounts $100. He claimed an exemption on his household goods and livestock to the amount of $448, and that salary was due to his clerks amounting to $274. These clerks consisted of Miss Bessie Dobson, Carson Dobson, W. H. Dobson, and E. B. Dobson.

It appears that the attorney for the bank undertook to get the referee in bankruptcy to release or disclaim any interest in the property described in the trust deed executed by Dobson and wife; the referee was assured that the property mentioned in trust deed would no more than pay the banks' debt,—there would be no surplus for general creditors. The referee refused to comply with this request and ordered or requested the bank to have its mortgage foreclosed. The bank proceeded to advertise and before sale was confronted with the complainants' injunction bill.

In March, 1921, O. P. Dobson was indebted to the defendant bank by notes as follows: 1 for $500 with T. J. Lowry et als, sureties; 1 for $600 with W. H. and A. C. Dobson as sureties; 1 for $400 with his wife Mabel Dobson on it; 1 for $400 with W. H. and A. C. Dobson on it.

These notes were all past due and on the 10th day of March, 1921, O. P. Dobson and wife Mabel Dobson executed a note for $1900 secured by a deed of trust on a tract of land and a pair of horses in renewal of these four notes, and the four notes were surrendered to them and are all brought into the record in this case by O. P. Dobson's testimony.

As to the notes for which the $1900 note was given, as a renewal of the existing indebtedness, it appears that W. H. Dobson and T. J. Lowry were solvent. A. C. Dobson was probably insolvent.

Most of this money had been borrowed from the bank for the purpose of carrying on a mercantile business. O. P. Dobson testified that he had been a stock man, a school teacher, and his occupation at the time he gave his deposition was that of a "broke merchant." The proceeds of the discounted notes was deposited to the joint account of O. P. Dobson and wife.

There is some proof tending to show that Mrs. Dobson was interested in the mercantile business with her husband; she had been sued jointly with her husband in some instances; these judgments had been stayed, but she and her husband both deny that she had any

interest in the mercantile business, and we are of opinion, and so find, that she was not a partner in this mercantile business.  O. P. Dobson said that he wanted the deposit so his wife could check on the account because she was always ordering something from Bellas-Hess, Kress', or Sears Roebuck and he wanted to let her have the privilege of checking for cash when she needed it.

The complainant has assigned the following errors:

First:  The court was in error in excluding the evidence of O. P. Dobson and the complainant, who underook to relate a conversation with Mr. Lockhart who was cashier of the defendant bank when complainant and her husband executed the trust deed to secure the $1900.  It is insisted by these two witnesses that Lockhart said he would like to have a deed of trust to secure the bank, but that it would not be binding on Mrs. Dobson personally; that he wanted it so that he could get by the bank examiner and satisfy him; that he would look to Dobson for the money; that Lockhart was satisfied that Dobson would pay it and that he did not except the trust deed to be binding upon Mrs. Dobson's real estate.  The chancellor excluded this evidence.

Assignment No. 2 is that the chancellor was in error in dismissing complainant's bill and refusing her relief; that he should have held the trust deed to be void.

The third assignment is, the chancellor was in error in not granting complainant full relief.

The fourth assignment is, it was error for the chancellor to refuse to hold that the real estate and horses involved where the property of complainant, and in refusing to cancel the deed of trust thereon.

The fifth assignment is, it was error in the chancellor to refuse to hold that the complainant was the joint owner of the property with her husband, after refusing to hold that she was not the sole owner, and in declining to decree her the homestead therein.

It appears that the trust deed, after being acknowledge was delivered to Mr. Lockhart.  He placed it in the safe of the bank and it was not recorded until July 21st,—something like four months after its execution.

There is some proof tending to show that complainants' husband requested Lockhart not to place this trust deed of record; that he was negotiating to get some money from his wife's relatives, and he could more easily obtain the loan if the property was not encumbered by a registered mortgage.  Lockhart died shortly after the registration of this trust deed.  The defendant Dobson was a director in defendant bank and was a member of the finance committee at the time the deed of trust was executed.  The successor to Lockhart and other officers of the bank spoke to Dobson a number of times about his indebtedness and he promised to pay it.  No question was

ever made or raised by either Dobson or his wife that they had an agreement with Lockhart that the property conveyed in the trust deed was not to be bound for the debt.

As to the first assignment of error, we are of opinion that the chancellor properly excluded the statements of complainant and her husband with reference to promises and agreements had with Lockhart, for two reasons, viz: First: Complainant should not be permitted to contradict and change the written tust deed duly executed and delivered, by oral testimony. Bank v. Barbee, 150 Tenn., 356; McGammon v. Ferrell, 141 Tenn., 631; Pharr v. Stevens, 124 Tenn., 669; Alston v. Bank, 8 Higgins, 420.

We are also of the opinion that this was a valid trust deed executed by the complainant and her husband to secure pre-existing debts of O. P. Dobson, amounting to $1900, and for $400 of which complainant was bound. An antecedent or pre-existing debt constitutes value and is deemed such where the instrument is payable on demand or at a future time. Value is any consideration sufficient to support a simple contract. Crane v. Hall, 141 Tenn., 556.

In Henderson v. Rice, 1 Cold., 224, it was held that the consideration to the principal is a sufficient consideration to sustain a trust conveyance by the surety on the faith of which the credit was obtained; and even if the conveyance were voluntary, equity would not actively interfere, at the instance of the surety as complainant, to set aside the conveyance, in the absence of fraud or other ground of equity.

The second ground upon which the evidence excluded is incompetent is that complainant entered into a collusive arrangement with the agent of the bank or with Lockhart, according to her testimony for the purpose of misleading the bank, and she is estopped to predicate thereon any rights against the bank; nor can she hold the bank liable for the acts of Lockhart in this matter.

In the case of Alston v. Bank, supra, complainants sought to set up an oral agreement similar to the one relied on in the instance case, and it was held in that case that a court of equity would refuse relief or aid to the parties seeking substantial rights or relief against the indebtedness where the party is relying upon a collusive arrangement between the party and its cashier, and that a party should be estopped from relying upon any agreement with the cashier of a bank, which agreement was purposely concealed from the directors.

In the case of Alston v. Bank, supra, the endorsers on the note of one McPherson insisted that they should be relieved of liability on the note because it was agreed between them and the cashier that the bank would never call upon them to pay the obligation that the cashier-desired their signatures for the express purpose of showing

the note to the director of the bank and thus satisfy the directors that the cashier was doing his duty and the indebtedness was well secured.

In delivering the opinion in Alston v. Bank, supra, this court said: "We are of opinion that this reveals a want of equity in petitioners, such as justified the dismissal of their petition. In addition to that, these admissions bring forward the clearest grounds upon which to found an estoppel.

"They virtually authorized the cashier as their agent to assure the bank directors, who were pressing for collection, that the indebtedness of McPherson was secured, and thus cause the bank directors to desist from their efforts to realize upon the assets.

"They should be held estopped to dispute liability. Moreover, the petition reveals costructive if not actual fraud. It was not fair nor equitable to the bank for the sureties to enter into a secret agreement with the cashier and enable the latter to mislead his superiors. They thus show that their fingers were soiled and that they cannot be admitted to the precincts of a court of equity for redress. Equity is constrained to turn a deaf ear to such appeals."

It results that the first assignment of error is overruled.

We will dispose of all of the other assignments of error together.

We are of opinion that the trust deed executed by the complainant and her husband is a valid trust deed, duly acknowledged and recorded. It appears that the land was owned by the complainant and her husband as tenants by the entirety, and it makes no difference whether the property was owned jointly or by Mrs. Dobson, or by her husband, they conveyed their entire rights and interest to the trustee for the purpose of securing the $1900 note. Both complainant and the defendant Dobson executed this note. It is a joint note of the two, secured by the joint trust deed of the two.

Complainant has failed to sustain her bill by a preponderance of the evidence. There is no error in the decree of the chancellor in dismissing her bill and denying her any relief. All of the assignments of error are overruled and disallowed. The decree of the lower court is in all things affirmed. Complainant will pay the costs of the cause, including the cost of the appeal, for which execution will issue against her. The cause will be remanded to the chancery court of Benton county for the purpose of foreclosing the trust deed under the orders of the chancery court of said county. Affirmed and remanded.

Clark and DeWitt, JJ., concur.