NICHOLS *v.* CECIL.

(*Nashville.* February 16, 1901.)

1. CHANCERY PLEADING AND PRACTICE. *Proof of averments of bill and answer essential, when.*

Averments of bill, not admitted by answer, must be proved. So, likewise, averments of answer not responsive to bill must be proved. (*Post, pp. 460, 462–464.*)

2. SAME. *Answer not in confession and avoidance, but in denial, when.*

Averments of answer are not in confession and avoidance, but constitute a denial of the contract set out in the bill that puts complainant to proof thereof, which admit the terms of the contract as set out in the bill, but state, in addition, that the contract contained other material provisions and stipulations. (*Post, pp. 462–464.*)

3. SAME. *Bill of exceptions essential to preserve evidence heard on jury trial.*

Evidence heard on jury trial of issues in a chancery cause does not constitute part of the record on appeal to this Court unless it has been preserved and made such by bill of exceptions. (*Post, pp. 459, 460, 465.*)

4. SUPREME COURT. *Will not sustain verdict on jury trial of chancery cause, when.*

When, on a jury trial of issues in a chancery court, a vital controverted fact—*e. g.*, the existence and terms of the contract sued on—is not submitted to or found by the jury, this Court cannot sustain a decree based upon a verdict in favor of complainant, in the absence of evidence, made part of the record

by bill of exceptions, establishing the contract independently of the jury's verdict. (*Post, pp. 464–466.*)

## FROM MAURY.

Appeal from Chancery Court of Maury County. A. J. ABERNATHY, Ch.

E. H. HATCHER and FIGURES & PADGETT for Nichols.

W. B. GORDON and G. T. HUGHES for Cecil.

McALISTER, J. The object of this bill is to recover damages for the alleged breach of a warranty in the sale of wheat. The bill alleges that about August 25, 1897, complainant and defendant entered into a contract whereby it was agreed that defendant would sell and deliver at once, free on board cars at Ashwood, Tenn., 6,000 bushels of No. 2 wheat, and upon delivery thereof complainant should pay defendant the sum of one dollar per bushel for such wheat, the defendant warranting that said wheat should be No. 2 wheat. Soon after the contract was made defendant notified complainant that he had delivered the wheat on board the cars at Ashwood, whereupon complainant paid defendant for the entire quantity, about 6,000 bushels, according to contract, relying

upon the defendant's statement and warranty that said wheat was No. 2 wheat, which is the highest grade known to the trade. Complainant did not examine and inspect said wheat so delivered at Ashwood, nor did he see it at all, but relied upon the warranty. It is then alleged that complainant shipped 2,730 bushels of this wheat to a purchaser at Nashville, representing it to be No. 2 wheat, but the wheat was rejected, and graded only as No. 4 wheat. Complainant thereupon gave defendant notice that the wheat was not up to the warranty, and was held subject to his order. But defendant refused to receive the wheat or refund the money, whereupon complainant sold it at a loss of $543.70, and to recover this amount brings this bill.

Defendant, in his answer, admits he sold the wheat to complainant as No. 2 wheat, and that the same was to be delivered f. o. b. the cars at Ashwood, Tenn. Defendant further avers that he did say to complainant that he would make the wheat delivered at Ashwood No. 2 wheat if the same was not up to grade when delivered. Defendant avers that his agreement with complainant was that it should be made No. 2 wheat at the place of delivery and acceptance, namely at Ashwood, but he did not undertake nor would he have contracted with complainant that said wheat would grade No. 2 wheat at the Liberty Mills in Nashville, or any other market, in view of

the uncertainty and fluctuations of the market at that time.

Defendant, further avers that he delivered the wheat at Ashwood according to contract; that it was No. 2 wheat, and if, it was not up to grade it was complainant's duty to inspect and reject it, and that having accepted it, he could not ship it to another market, and it being rejected there, throw it back upon defendant. There is a general denial of all the allegations of the bill not specifically denied.

Complainant filed an amended bill, in which he alleged that he purchased this wheat of defendant for speculation, to be shipped to Nashville and other markets, and that this fact was well known to defendant.

Defendant answered the amended bill stating that he supposed complainant did buy this wheat for speculation, and that he would ship the wheat away from Ashwood for sale. But defendant repeats that under the contract the wheat was to be received, inspected, accepted or rejected at Ashwood, the place of delivery, and if the wheat upon inspection at Ashwood had not come up to the grade of No. 2 wheat, defendant could at little expense have caused said wheat to be refanned, etc.

This is a condensed statement of the case as made in the pleadings. Defendant demanded a jury, to whom formal issues were submitted under

the direction of the Chancellor, together with the evidence produced on the trial. The material issues submitted, together with the findings of the jury, are, viz.:

1. Was any portion of the wheat delivered by the defendant to complainant at Ashwood, under his contract, inferior to No. 2 wheat?

*Ans.* There was.

2. How much wheat was inferior to No. 2?

*Ans.* 2,691 bushels.

9. Did not complainant receive and accept the wheat at Ashwood, the place of delivery?

*Ans.* Yes, as per contract.

10. What amount of damage did complainant sustain by reason of the delivery of inferior wheat to him by defendant?

*Ans.* Three hundred and twenty-two dollars and ninety-two cents.

The Chancellor, upon the verdict of the jury, pronounced a decree in favor of complainant for $322.92. Defendant appealed. The Court of Chancery Appeals reversed the decree of the Chancellor and dismissed the bill. Complainant appealed to this Court, and has assigned errors.

At the last term of this Court the decree of the Court of Chancery Appeals dismissing the bill was affirmed. A rehearing, however, was granted, and the case has been reargued at the present term.

It is to be remarked, in the first place, that

none of the evidence heard by the Chancellor was preserved by bill of exceptions, but only the pleadings, the findings of the jury, and the decree of the Chancellor are embodied therein.

The cardinal and fundamental question arising upon the record is, What was the contract between the parties?

The Court of Chancery Appeals correctly states that "it becomes apparent that none of the charges of the bill can be taken as true unless admitted in the answer or sustained by the findings of the jury. And it is equally true that no affirmative statement in the answer which it would be necessary for the defendant to prove can be taken as true, unless sustained by one of the findings of the jury."

But that Court undertakes from the pleadings to find the contract between the parties, concluding, viz.: "We therefore find (from the pleadings) that the parties agreed that wheat to the amount of five thousand five hundred bushels, which should be No. 2 wheat, was to be sold and delivered by the defendant to the complainant f. o. b. cars at Ashwood, Maury County, for which defendant was to be paid one dollar per bushel. To this extent (says that Court) the parties are agreed, but no further on this phase of the case."

This Court is of opinion that the contract between these parties cannot be determined from the pleadings, for the following reasons:

The bill alleges that defendant sold complainant No. 2 wheat, to be delivered on board the cars at Ashwood, warranting that it should be No. 2 wheat, the highest grade on the market. It is further alleged that at the time said contract was made the defendant said that if it was not No. 2 wheat he would make it No. 2 wheat.

Respondent admits that he sold to complainant said wheat as No. 2 wheat, and that the same was to be delivered by him at Ashwood, f. o. b. c.

"And respondent further says that he did say to the complainant that he would make the wheat delivered by him at Ashwood No. 2 wheat, if the same was not No. 2 when delivered; or, in other words, his agreement was that if any of the wheat sold by him, which was to · be delivered by him and received by complainant at Ashwood, was not No. 2 wheat, he agreed that it should be made No. 2 at the place of delivery and acceptance."

It will be observed that both complainant and defendant agreed that Ashwood was the place of delivery, and that the wheat was warranted to be No. 2 wheat. It is also· agreed that the wheat was accepted by complainant at Ashwood, and the purchase price paid in full. But at this point defendant in his answer introduces a new term, which he avers was a part of the contract, namely: that the wheat was to be accepted or rejected at the place of delivery, to wit, Ashwood.

The answer admits the contract alleged in the bill, but avers that it contained other and additional terms or provisions which are not therein stated, but which are material and fundamental.

Counsel for complainant, in support of the contention that the contract alleged in the bill is admitted by the answer, cites Gibson's Suits in Chancery, Sec. 460, page 415, viz.:

"When the answer sets up matter in avoidance, it is not evidence for the defendant, because he is not a witness, except in so far as he is required to answer; when, therefore, he sets forth in his answer matter in avoidance, or other matter not referred to in the bill, to that extent his answer is not responsive, and therefore not a deposition, but a mere pleading. Hence matters in avoidance set up in an answer must be proved by the defendant; and, if he fails to prove them, the complainant will be entitled to a decree."

It is insisted, however, by counsel for defendant that when complainant states in his bill a contract in certain terms, and the defendant in his answer admits the existence of those terms, but alleges that the contract contained other terms and conditions not mentioned in the bill, this is a denial of the contract alleged, and is not a defense by way of confession and avoidance which admits the contract as charged, but seeks to avoid it by extraneous matter.

We are constrained to hold this contention sound,

and that the matter in defense is not in confession and avoidance. "Every pleading by way of confession and avoidance in reference to its subject - matter goes either in discharge of the cause of action or in justification or excuse, which denies that there ever was any. 1 Chitty's Pleading, 16 Am. Ed., 551. A plea in discharge is one which admits that the plaintiff had a cause of action, and tends to show that it was discharged by some subsequent or collateral matter. Tidd's Pr., 4 Am. Ed., 642-645. An illustration of the plea in discharge would be that before action the defendant had satisfied and discharged the plaintiff's claim by payment. A plea in justification or excuse admits the facts alleged by the plaintiff, but in effect denies that the plaintiff had at any time a good cause of action either because the conduct of the defendant is justified in law under some legal right or because he is excused from liability in the particular case through some act or conduct of the plaintiff. This is also called an avoidance in law. Tidd's Practice, 4 Am. Ed., 641; Am. & Eng. Enc. Pl. & Pr., Vol. 4, p. 665. It will be observed that under the plea of confession and avoidance, whether the matter relied on is in discharge of the original cause of action or a justification for non-performance, the matter pleaded is subsequent or collateral to the main undertaking. Therefore,

it is obvious that the averment in this answer of
additional terms and stipulations as part of the
original contract is not, under any rule of plead-
ing, matter in confession and avoidance, but is
the averment of a new and substantive contract.

The answer in this case is responsive to the
bill, and hence complainant is not entitled to use
the admissions of the defendant's answer to charge
him without giving him at the same time the
benefit of the matters of discharge with which
the admissions are coupled. *Beech* v. *Haynes,* 1
Tenn. Ch., 569. We cannot, therefore, upon the
pleadings determine the contract between the par-
ties.

The next inquiry is whether the contract is es-
tablished by the findings of the jury. No issue
was submitted to the jury on the terms of the
contract, and hence there is no finding upon this
subject. The most vital question in the case was
thus wholly ignored, and other issues propounded
and answered which are not determinative of the
litigation. The Court of Chancery Appeals was
of opinion that the ninth · issue and finding was
conclusive of the case in favor of the defend-
ant. That issue was as follows:

"Did not complainant receive and accept the
wheat at Ashwood, the place of delivery? *Answer*
Yes, as per contract." Counsel for the respective
parties differ widely in their interpretation of this

finding of the jury. On behalf of defendant, it is insisted that this answer and finding of the jury is conclusive of the question that there was no warranty of the wheat beyond its acceptance at Ashwood, while, on the other hand, complainant's counsel maintain that it means nothing more than that the wheat was accepted and paid for under the warranty. While we must presume there was ample evidence to sustain the finding of the jury, the question still remains whether the verdict of the jury supports the contention of complainant or defendant. We have no means of determining this question in the absence of proof of the contract..

This Court cannot presume there was sufficient evidence before the Chancellor to warrant him in finding the contract, for the reason that question not having been found by the jury would be triable *de novo* in this Court, and the record contains no evidence establishing the contract.

As to all issues submitted to the jury, this Court would presume, in the absence of a bill of exceptions preserving the evidence, that the findings of the jury were well sustained. But this Court cannot correctly interpret the findings of the jury without being advised as to the contract. This is the beginning corner of any investigation of the rights of the parties, and no matter what else appears, if there is no contract

22 P—30

shown or found by the jury, this Court cannot undertake to pronounce a decree for breach of contract. This case has been presented to this Court by counsel as if the contract were in some way shown, but its terms are not even agreed on in argument

In this anomalous state of the record the Court thinks it would be inequitable . to pronounce a decree in favor of either party, but that the cause should be remanded in order that proper issues may be formulated and submitted to the jury for the ascertainment of the contract. The costs of the appeal will be equally divided.