D. SHELBY WILLIAMS v. JAMES S. FRAZER.

Middle Section. November 1, 1927.

Petition for Certiorari denied by Supreme Court, January 21, 1928.

1. Witnesses. Husband and wife. Neither husband nor wife is competent to testify concerning matters occurring between them by virtue of or in consequence of the marital relation.

Evidence of conversations and transactions between the witness and her husband relating to the affairs of the husband and wife and which did not occur in the presence of a third person held properly excluded.

2. Witnesses. Husband and wife. Neither divorce nor death renders the other spouse competent to testify in regard to family matters.

Where the witness had been divorced from her husband and he had later died before she was called to testify, held that neither the divorce nor the death of her husband made the witness competent as to matters about which she was incompetent by reason of the statute to testify during the existence of the marital relation.

3. Evidence. Admissions. A defendant is bound by all admissions made in his answer.

In an action to recover money alleged to have been loaned where the defendant in his answer admitted receiving the check and the money thereon but further answered that it was in the nature of an advancement, held that the burden was on him to show that the money was not a loan.

4. Bills and notes. Checks. Presumption from the delivery of a check is that it is given in payment of a debt.

It is undoubtedly the general rule that in the absence of explanation the presumption arising from the delivery of a check is that it was delivered in payment of a debt and not as a loan.

5. Pleading. Complainant may avail himself of admissions in an answer but the answer can not be considered as evidence for the defendant.

Where an answer on oath is waived, although as a pleading the complainant may avail himself of admissions and allegations in the answer which go to establish the case made by the bill, such answer is not evidence in favor of the defendant for any purpose.

6. Interest. Where no date for the payment of interest is set, a loan bears interest from date.

In an action to recover a loan where the evidence or pleading did not show a specific time when interest should be due held that interest was payable by law immediately from the date of the delivery of the money to the borrower.

7. Interest. Where pleading and facts do not show date interest accrued Chancellor may set reasonable date.

In an action to recover on a loan where the evidence and pleading did not show the date that the party intended interest to accrue, held that the Chancellor did not violate his discretion in charging interest from the date of the delivery of the money.

Appeal from Part 2, Chancery Court, Davidson County; Hon. James B. Newman, Chancellor.

Affirmed.

J. M. Anderson, of Nashville, for appellant.

Thomas H. Malone, of Nashville, for appellee.

FAW, P. J.   This suit was instituted on February 5, 1919, by D. Shelby Williams, a citizen and resident of Davidson county, Tennessee, against James S. Frazer, also a citizen and resident of the same county and State, and the defendant Frazer filed an answer to the complainant's bill on February 18, 1919.   Mr. Williams, the original complainant, died after defendant's answer was filed but before any proof was taken by either party, and the cause was thereafter revived and prosecuted to a final decree in the name of the Fourth and First National Bank, executor of the will of the said Shelby Williams, deceased, as complainant.

When we speak of the complainant, in this opinion, the original complainant, D. Shelby Williams, is intended, unless otherwise indicated.

Complainant brought this suit to recover the sum of $500, with interest thereon, which, it was alleged, the defendant borrowed from complainant in the month of March, 1913, and which had not been repaid.   A final decree was entered in the chancery court on July 27, 1926, in and by which it was adjudged that complainant recover of defendant the sum of $500 principal, and $400 interest, and the costs of the cause, for all of which execution was awarded.   Defendant Frazer excepted to the aforesaid decree and prayed an appeal to this court, which was granted by the Chancellor and perfected by the defendant.

The decision of the main question in the case depends, in large measure, upon the proper interpretation of the pleadings, particularly the answer of the defendant, and for that reason the contents of the pleadings will now be stated.

It is alleged in complainant's bill that, on the first day of March, 1913, the defendant borrowed from the complainant the sum of $150; that, on the 13th day of March, 1913, the defendant borrowed from the complainant the further sum of $150; that on the 21st day of March, 1913, the defendant borrowed from the complainant the further sum of $200; and that all of said loans are evidenced by checks, then executed and delivered to the defendant, and used by him, and now in possession of complainant.   Then after stating that said checks read respectively as follows, three checks are copied into the bill, after which it is stated that the defendant has not paid said loans, or any of them, or any part thereof, and the same, together with lawful interest from their respective dates, are now justly due and payable.

After the usual prayer for process and waiver of answer under oath, the complainant prayed for a decree against the defendant for the amount of said loans, together with interest from their respective dates, and prayed for general relief.

The answer of the defendant is, in full, as follows:

"The defendant, James S. Frazer, for answer to so much of the bill filed against him in this cause as he is advised is material for him to answer, says:

"1. He denies that on the first day of March, 1913, he borrowed from the complainant the sum of $150.

"2. He denies that on the thirteenth day of ·March, 1913, he borrowed from the complainant the further sum of $150 or any other sum.

"3. He denies that on the twenty-first day of March 1913, he borrowed from complainant the further sum of $200, or any other sum.

"Defendant admits that the complainant now holds the checks, copies of which are set out in complainant's bill, but he denies that said checks or any of them are evidence of any indebtedness by this defendant to the complainant, or of the fact that the defendant ever borrowed any money from the complainant. Said checks were given by the complainant to the defendant under the circumstances and for the purpose now to be stated:

"At the time that said checks were issued by the complainant and given to the defendant, and for some time previous thereto, the defendant was interested in the development of a certain patent which was owned by this defendant and his associates. The proper and necessary development of this patent required more money than the defendant cared to take out of his business or from his personal estate. The defendant's mother, who at that time was the wife of complainant, was a lady of wealth. Her estate, particularly her personal estate and her cash, was under the control and management of the complainant, her then husband. She had authorized and empowered the complainant to pay to this defendant and to his brothers, her children of a former marriage, out of her estate then in the hands and under the control of the complainant, such reasonable sums as they, from time to time, might be in need of, the same to be charged to the particular child to whom such payments were made as advancements out of her estate. It so happened that in March, 1913, at the time the defendant needed the money for the development of his said patent, that the defendant's mother was in Europe. Therefore, it was, that instead of applying directly to his mother for advancement of five hundred ($500) dollars, he requested the complainant to advance to him out of his mother's estate then in the control, care and custody of the complainant, the different sums rep-

resented by the checks aforesaid, and it was on this account, knowing that he had authority from defendant's mother to do so, that the complainant gave and delivered to the defendant the checks, copies of which are set out in the bill, and it was fully understood at the time, both by the complainant and by the defendant, that these were advancements that the complainant made to the defendant out of the estate of defendant's mother, and not personal loans made by the complainant to the defendant. And that the complainant so understood this to be the case is evidenced by the fact that not until about the — day of ———, 1918, did this complainant ever claim that the defendant was indebted to him on any account or that these checks represented personal loans made by complainant to the defendant, and not until a few weeks before the bill in this case was filed was any demand ever made by complainant upon defendant to repay said alleged loans.

"Why the complainant saw fit to give his personal check instead of signing the name of defendant's mother to the check, by him, this defendant does not know, but, however, it may be, defendant denies that he owes the amount of these checks to the complainant, and states that the money he received on them were advancements made to him by his mother.

"And now having fully answered, defendant prays to be hence dismissed."

On the trial below, the deposition of Thos. F. Squires was read on behalf of complainant, and the depositions of Mrs. Mary W. Frazer and the defendant James S. Frazer were read on behalf of defendant. However, certain parts of the testimony of Thos. F. Squires, together with some exhibits to same, and also parts of the testimony of Mrs. Mary W. Frazer were excluded, and not considered, by the Chancellor.

A brief summary of the evidence admitted below is as follows:

Thos. F. Squires testified, in substance, that the deceased complainant, D. Shelby Williams, ran the Nashville Warehouse and Elevator Company for a number of years; that witness was employed by Mr. Williams from June 1, 1915, until Mr. Williams sold his interest in said business on June 1, 1921; that the relations of witness with Mr. Williams were close and confidential; that the salary of Mr. Williams, as president of the Nashville Warehouse and Elevator Company, from July, 1912, until January, 1916, was $5000 a year; that for some years before his death Mr. Williams operated a dairy from which he received a considerable amount of money each day; that the amounts thus received were deposited to the credit of Mr. Williams in bank; that Mr. Williams did not "keep regular books about his business" but, so far as he kept any account of his personal business transactions, they were kept through

his check book and bank account; that Mr. James S. Frazer was connected with the Imperial Motor Car Company while witness was with Mr. Williams; that Mr. Williams owned the building in which the business of the Imperial Motor Car Company was transacted and that witness had frequently handled rent checks (for the Imperial Motor Car Company building) from Mr. James S. Frazer to Mr. Williams.

Mrs. Mary Washington Frazer testified that she was the wife of the complainant D. Shelby Williams from the year of 1897 until a day in January, 1918, at which latter date she was divorced from Mr. Williams; that at the time of her marriage to Mr. Williams and up to and during the year 1913 witness was possessed of a large estate consisting of both realty and personalty, which produced an annual income of approximately $16,000 to $19,000 per annum; that about a month after her marriage to Mr. Williams she turned over the custody and management of her property to him; that as Mr. Williams collected income from the estate of witness he deposited some of it in the bank to the credit of witness and deposited a portion to his own account; that witness is the mother of the defendant James S. Frazer; that James S. Frazer lived in Davidson county, Tennessee, and was married and had a family of his own in 1913; and that from February 15th to the 1st of May, 1913, witness was in Europe.

On cross-examination Mrs. Frazer stated that she separated from Mr. Williams on the 26th day of May, 1915; that Mr. Williams returned her stocks, bonds and other personal property to her in April, 1915; that (while Mr. Williams had possesion of the estate of witness) he drew checks against the account of witness, which checks were signed "Mary W. Williams, by D. S. Williams;" that Mr. Williams drew such checks "whenever he wished to;" that witness never gave Mr. Williams any authority to do that, but he did it and witness expected it.

The defendant James S. Frazer testified that the first knowledge or information he had of the fact that complainant Williams claimed that defendant was indebted to him or had ever borrowed any money from him was in 1917 or 1918 during his cross-examination in the suit of Williams v. Williams; that when the questions were asked him about the indebtedness claimed against witness by complainant Williams, the nature of the question was such a surprise that witness could not "even bring to mind" the transaction; that after witness left the stand on that occasion he and his mother discussed the questions that had been asked on cross-examination; that witness has lived in Nashville continuously since 1913; that during that period witness had been engaged in business on his own account and

has been solvent and good for any judgment that might be obtained against him in the sum of $500 with interest and cost.

On cross-examination defendant stated that the original checks, amounting to $500, were exhibited to him on his cross-examination (in the case of Williams v. Williams).

Upon the pleadings and the aforestated evidence, the Chancellor found and decreed as follows:

"That in the month of March, 1913, complainant issued and delivered to defendant two checks for $150 each and one for $200, all payable to him, and these checks were honored by the bank on which they were drawn, and the proceeds arising therefrom applied by the defendant to his use; that the drawing of the checks by the complainant, and the receipt of the money thereon by the defendant are admitted in the answer; that liability for these checks is sought to be avoided by defendant on the ground that they represented advancements made to the defendant out of funds belonging to the estate of his mother; that the burden is on the defendant to sustain his special defense by a preponderance of the proof, which he has failed to do.

"It is therefore ordered, adjudged and decreed by the court that the complainant have and recover of the defendant the sum of $500 principal, and $400 interest, together aggregating $900, and the costs of this cause, for which let an execution issue."

Through his assignments of error numbered one to eight, inclusive, the defendant asserts that the Chancellor erred in excluding certain testimony of the defendant's witness Mrs. Mary W. Frazer. We do not think it necessary to extend this opinion by quoting the testimony thus excluded. It was testimony of Mrs. Frazer relating to transactions and conversations between herself and her husband, the complainant D. Shelby Williams, and which, we find, "occurred between them by virtue of or in consequence of the marital relation," within the contemplation of the statute carried into sec. 5596, Shan. Code, which, in effect, declares that neither husband nor wife shall be competent to testify concerning such matters. The conversations and transactions between the witness and her husband, about which she undertook to testify in the excluded testimony, clearly related to the affairs of the husband and wife, and there is no suggestion that they occurred in the presence of a third person. The wife's testimony relating to such conversations and transactions was properly excluded. Crane & Co. v. Hall, 141 Tenn., 556, 563, 213 S. W., 414; McCormick v. State, 135 Tenn., 218, 224, 186 S. W., 95; Ins. Co. v. Shoemaker, 95 Tenn., 72, 82, 31 S. W., 270.

And neither her divorce from complainant Williams nor his death, before she was called to testify, rendered Mrs. Frazer a competent witness to matters about which she was incompetent, by reason of

the aforesaid statute, to testify during the existence of the marital relation. Kimbrough v. Mitchell, 1 Head, 539, 542; Patton v. Wilson, 2 Lea, 101, 104. For the reasons stated, the appellant's first eight assignments of error are overruled.

Through his twelfth assignment the defendant says that the Chancellor erred in granting complainant a recovery for the amount sued for in the bill. The ninth, tenth and eleventh assignments are subsidiary to the twelfth assignment, supra; that is to say, the ninth assignment is that the Chancellor erred in not finding and holding, from the proof in the case, that the defendant did not borrow from the complainant the sum of $500 as alleged in the bill; the tenth assignment is that the Chancellor erred in finding and holding that the defendant was required to show by a preponderance of the evidence that the checks sued on in the case were not given for borrowed money, but represented advances made to the defendant out of funds belonging to the estate of his mother, and the eleventh assignment is that the Chancellor erred in not finding and holding that there was no evidence in the record to support the averment of the bill that the checks mentioned therein represented money borrowed by the defendant from the complainant.

The questions arising out of the last mentioned four assignments of error have been argued at the bar and on the briefs by learned counsel for complainant and defendant, respectively, in an able and interesting manner, and it has been with no little difficulty that we have reached the conclusion which will now be stated.

In view of the admissions in defendant's answer, and in the absence of proof supporting the affirmative averments of the answer to the effect that the three checks described in the bill represented advances made to the defendant out of funds belonging to the estate of his mother, we are of the opinion that complainant is entitled to a judgment against defendant for the amount of the three checks.

If defendant's answer had stopped with a simple traverse of the allegations of the bill, the complainant would not be entitled to a recovery upon the proof in the record. But the admission in the answer that "the complainant now holds the checks, copies of which are set out in complainant's bill," when read in connection with the allegations of the bill and the copies of checks therein, is an admission that complainant's checks described in the bill, amounting to $500, were received and used by the defendant.

At this point it may be well to inquire what presumption, if any, arises from the unexplained delivery of a check. In 5 R. C. L., pp. 486-487, sec. 9, it is said:

"The question not infrequently has been presented, whether from the unexplained delivery of a check it is to be inferred that the drawer intended it as a gift or loan or as payment of an existing

indebtedness. It is undoubtedly the general rule that in the absence of explanation the presumption arising from the delivery of a check is that it was delivered in payment of a debt and not as a loan. A check, on its face, is a mere order to another to pay money; it does not by its terms settle the question whether the money was to pay a debt or was a loan. The presumption that it was to pay a debt arises, like other presumptions, from the ordinary course of business; it puts the party to show that in the case in hand the ordinary course of business was departed from. It is to be remembered that the presumption is one of fact, a mere rule of argument, proceeding from convenience, the common experience being that a check drawn on a bank of deposit is much more frequently a means of payment than otherwise; and the presumption is overcome by proof of circumstances from which it may fairly and reasonably be inferred that the transaction was in fact a loan. The presumption is that a check is intended as payment on the account of the party to whom it is delivered rather than that it is intended to be passed on to another person on his account. As between a loan and a gift the presumption from the delivery of a check is that it was intended as a loan and not as a gift.''

The text above quoted from Ruling Case Law is well sustained by adjudged cases digested in a note to the case of Leask v. Hoogland (N. Y.), Anno. Cas., 1913-D, pp. 1203-1204.

The defendant's denial that said checks ''are evidence of any indebtedness by defendant to complainant, or of the fact that defendant ever borrowed any money of complainant ''is a mere legal conclusion. What the checks in question ''are evidence of'' is a matter of law.

However, the admission of defendant that he had received and used complainant's three checks aggregating $500 described in the bill would not, without more, afford a sufficient predicate for a judgment against defendant, because, as we have seen, the presumption arising from the unexplained delivery of a check is that it was delivered in payment of a debt rather than as a loan. But we think the affirmative averments of the answer that the checks were given by complainant to defendant as advancements made by complainant to defendant out of the estate of defendant's mother then in the hands and control of complainant, if true, necessarily exclude the idea that the checks in question were given in payment of a debt owing by complainant to defendant. The presence in defendant's answer of the averments just mentioned would preclude the defendant from introducing evidence tending to show that the checks were given in payment of a debt. Having taken the position that the checks were given by complainant and received by defendant for the specific purpose stated in the answer, defendant must act consistent-

ly therewith throughout 'the litigation. Stamper v. Venable, 117 Tenn., 557, 562, 97 S. W., 812; Johnston v. Railway Co., 146 Tenn., 135, 160, 240 S. W., 295; Hardwick v. American Can Co., 115 Tenn., 393, 399, 89 S. W., 735.

The case of Bartlett v. Gale, 4 Paige's Chy. (N. Y.), 503, is cited with approval by our Supreme Court in the case of Lindsley v. James, 3 Cold., 477, 487, and in Bartlett v. Gale, the Chancellor said:

"The defendants' counsel is wrong in supposing that the whole answer must be taken together as evidence, and that the complainant cannot avail himself of the admissions in one part of it, without being also bound by the statements and allegations in other parts of the same answer. This is not so, even where the complainant calls for an answer on oath; except as to those parts of it which are responsive to the bill. But where an answer on oath is waived, although as a pleading the complainant may avail himself of admissions and allegations in the answer which go to establish the case made by the bill, such answer is not evidence in favor of the defendant for any purpose."

In Wigmore on Evidence, Vol. 3, sec. 2122, it is said: "The orthodox rule, then, has always been that, upon a hearing in chancery, the plaintiff may use as judicial admissions whatever admissions he can find in the defendant's answer, but the defendant may not use the remainder of the answer in his own favor."

In the instant case, the complainant is entitled to the benefit of the express admission in defendant's answer that he (defendant) received and used the checks mentioned in the bill, and complainant is also entitled to the benefit of any legitimate inferences which may be drawn from the affirmative allegations of defendant's answer, although they serve to establish loans by complainant to defendant in the face of the original denials of the answer. Yost v. Hudiburg, 2 Lea, 627. The defendant's assertion in his answer that the avails of the three checks which were admittedly received and used by him were "advancements made to him by his mother" deprives defendant of the presumption that the checks were delivered to him in payment of a debt or as a gift by complainant, but, as the defendant may not use the averments of his answer as evidence in his own behalf, the presumption stands that the checks in question represented a loan by complainant to defendant.

The insistence on behalf of defendant, in substance and briefly stated, is that the averment in defendant's answer that the checks in question represented advancements made to defendant out of the estate of his mother, although affirmative in form, is negative in substance, and should be characterized as an "argumentative de-

nial,'' making an issue which casts upon complainant the burden of proving the material averments of his bill.

The cases cited as supporting defendant's contention that the averments of his answer constitute a mere ''argumentative denial'' of the allegations of complainant's bill are from other jurisdictions, mainly from the State of, Indiana, but cases from other States touching the effect of pleadings are unsafe guides, for the reason that the rules of common law and chancery pleading have been greatly altered in practically all the States by statutes differing from the statutes and rules prevailing in Tennessee. We are of the opinion that the authorities we have cited control the decision of the present case, rather than the cases of Nichols v. Cecil, 106 Tenn., 455, 61 S. W., 768, and Fultz v. Melcher, 1 Hig., 72. The appellant's ninth, tenth, eleventh and twelfth assignments of error are over-ruled.

The thirteenth (and last) assignment is that the Chancellor erred ''in allowing the complainant $400 interest on the principal amount for which judgment was given against defendant.''

The Chancellor granted complainant a judgment for interest from the time the loans in question were made in March, 1913. There is no suggestion, either in the pleadings or the proof, that there was an express agreement at the time the loans were made that they should be due and payable either at a specified time or on demand; hence, they were in law payable immediately and should bear interest from their date. Collier v. Gray, 1 Overton, 110.

If the holding in Collier v. Gray, supra, does not apply here, and the matter of interest was within the sound discretion of the Chancellor, we do not think the facts of the record would justify a finding that the Chancellor abused his discretion, and therefore his action in that respect will not be reversed by this court. Davidson County v. Olwill, 4 Lea, 28, 34; Gibson County v. Rains, 11 Lea, 20, 24; Equitable Trust Co. v. Central Trust Co., 145 Tenn., 148, 185, 239 S. W., 171; Johnston v. Railway Co., 146 Tenn., 135, 167, 240 S. W., 295. The thirteenth assignment of error is overruled.

It results that the decree of the Chancellor is affirmed, and a decree will be entered accordingly, against the defendant James S. Frazer and the surety on his appeal bond, and the costs of the appeal will also be adjudged against defendant Frazer and the surety on his appeal bond.

Crownover and DeWitt, JJ., concur.