# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

KENNETH R. RUDSTROM,  )
EXECUTOR OF THE ESTATE OF  )
FRANK E. MUSTIN, Deceased,  )
               )
    Appellant,  )    Shelby Probate No. B-17481
               )
vs.  )
               )    Appeal No. 02A01-9605-PB-00098
RONALD S. TERRY, Individually and  )
d/b/a RONALD S. TERRY  )
CONSTRUCTION CO., INC.  )
               )
    Appellee.  )

**FILED**

**November 14, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

APPEAL FROM THE PROBATE COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE

THE HONORABLE LEONARD D. PIEROTTI, JUDGE

For the Appellant:           For the Appellee:

S. Newton Anderson          Rex L. Brasher, Jr.
Memphis, Tennessee         Memphis, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, J.

CONCUR:

ALAN E. HIGHERS, J.

DAVID R. FARMER, J.

**OPINION**

This case involves a claim against an estate for money allegedly loaned to the decedent while he was alive. The trial court found the evidence sufficient to establish that the check written to the decedent was a loan, not payment on a debt. We affirm.

In August of 1991, Appellee Ronald S. Terry Construction Company, Inc. ("Terry Construction") filed a claim against the estate of Frank Mustin, Sr. ("Mustin") for $100,000. Terry Construction alleged that Ronald Terry ("Terry"), the company's owner, had loaned Mustin money for the purchase of real estate.[1] The executor of the estate, Appellant Kenneth R. Rudstrom ("Rudstrom"), filed an exception to the claim on the grounds that the estate was not indebted to Terry.

A bench trial was held. The evidence established that Mustin and Terry had a history of oral business deals, and never reduced their agreements to writing. On June 13, 1990, Terry took out a bank loan for $100,000 and had the bank issue a cashier's check in the amount of $99,000.05. The check was made out to Nat Parham ("Parham"), Mustin's closing attorney on a real estate purchase Mustin was making in Mississippi. The check showed that Terry Construction was the remitter. Terry's son picked up the check from the bank and took it to Terry Construction. A Mustin employee went to Terry Construction to get the check and took it to Parham. Parham used the check to pay the balance purchase price of the Mississippi property and related expenses, which also totaled $99,000.05. The closing occurred on June 14, 1990, the day after the bank loan to Terry was made.

During the trial, Terry began to testify about his transaction with Mustin, but Rudstrom objected, invoking the Dead Man's Statute. At that point, the trial court began questioning Terry:

> THE COURT: Let me ask you this. Why were you sending this check to Mr. Parham?
>
> THE WITNESS: Mr. Frank Mustin --
>
> THE COURT: Had you talked to Mr. Parham?
>
> THE WITNESS: No, sir. Mr. Mustin asked me to make the check out to Mr. Nat Parham. He would pick it up in my office and deliver it to Mr. Parham to buy this property with. He wanted it -- needed the money for the loan.

---

[1]Although technically Terry Construction is the appellee in this case, we will refer to Terry, the owner, as the party.

THE COURT: You didn't know Mr. Parham at all as far as this transaction is concerned?

THE WITNESS: Yes, sir. Mr. Parham had -- I had bought some property where my office is from Mr. Mustin in 19 --

THE COURT: Well, did you know Mr. Parham was handling this at the time?

THE WITNESS: Yeah. Mr. Mustin told me he was. Mr. Mustin instructed me to write the check to Mr. Parham for this property.

THE COURT: That's as far as I am going to let him testify.

Rudstrom renewed his objection for the record.

Mustin's widow, Rebecca Crawford Sebree ("Sebree"), also testified at the trial. She testified that her husband had owned several pieces of property, only one of which was mortgaged. Sebree said that she believed Mustin might have had a $100,000 line of credit at First Tennessee Bank, which she thought was unused. She also stated that, shortly after Mustin's death, Terry had told her that Mustin owed him $16,000 but did not, at that time, mention a $99,000 debt. In response to questions from the trial court, Sebree testified that Mustin had told her that the $99,000 from Terry had been a payment for some equipment of Mustin's that Terry had been using, as well as for the privilege of dumping concrete on some of Mustin's property. Sebree acknowledged that apart from what Mustin had told her, she had no independent knowledge about the check from Terry or the reason why it was written.

The trial court found that the check from Terry had been a loan, not payment on a debt. In its Memorandum Opinion, the trial court set forth the reasons for its decision:

> The fact that there is no contract or anything in writing evidencing this transaction has made it difficult for the Court to determine its character. The Court recognizes that there is a presumption that the transaction was payment of a debt owed to the Decedent [Mustin], but the circumstances surrounding the transaction indicate that the $99,000.05 was intended to be a loan for the purchase of the Decedent's property in Mississippi. The events that transpired were characteristic of such a loan.

> A copy of the cashier's check was submitted to the Court. The cashier's check was made payable to the Decedent's closing attorney in the amount of $99,000.05 and showed the Claimant [Terry] as the remitter. Coincidently, the amount that the Decedent was required to bring to the closing was $99,000.05. . . . It seems hard to believe that a debt owed to the Decedent was the exact amount due at closing. Mr. Parham testified that the check was used in the purchase of the Mississippi property, and the purchase of said property was made one day after the Claimant purchased the cashier's check. The Claimant testified that matters were handled in the aforementioned manner at the Decedent's direction. In summary, from the fact that 1) the amount of the check was $99,000.05 (the exact amount that the Decedent was to bring to closing); 2) the check was made payable to the

2

Decedent's closing attorney; 3) the Claimant was the remitter; and 4) the Decedent used the check to purchase property in Mississippi "it may fairly and reasonably be inferred that the transaction was in fact a loan." Williams, 6 Tenn.App. at 218.

\* \* \*

The Court finds that the Claimant brought forth clear and convincing proof so that it is reasonable to infer from the circumstances in this case that the transaction was in fact a loan.

The court also found the evidence that Terry owed the money to Mustin unconvincing, concluding that the testimony from Mustin's widow left questions unanswered and "highly questionable." Rudstrom now appeals the decision of the trial court.

On appeal, Rudstrom contends that the trial court erred in finding the proof of a loan sufficient to overcome the presumption that the check had been payment of a debt. Rudstrom also argues that the trial court erred in allowing Terry to testify concerning his transaction with Mustin, contending that this testimony was inadmissible under the Dead Man's Statute.

Our review of this case is *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Absent error of law, the trial court's decision will be affirmed, unless the evidence preponderates against the factual findings. Tenn. R. App. P. 13(d). No presumption of correctness attaches to the trial court's conclusions of law. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

In Tennessee, the unexplained delivery of a check raises the presumption that the check was payment of a debt, not a loan. *Williams v. Frazer*, 6 Tenn. App. 211, 218 (1927). Similarly, there is a presumption that the check was a loan rather than a gift. *Id.* The presumption that the check was payment for a debt, however, is not a conclusive one. It "is overcome by proof of circumstances from which it may fairly and reasonably be inferred that the transaction was in fact a loan." *Id.* (quoting 5 *Ruling Case Law* § 9, at 486-87).

Apart from Terry's testimony concerning his transaction with Mustin, the remaining evidence of a loan is circumstantial. However, as previously noted by this Court:

Any material fact can be proved by circumstantial evidence. In certain cases, this Court has recognized that a well connected train of circumstances may be more convincing than direct evidence on the same matters.

*Knapp v. Holiday Inns, Inc.*, 682 S.W.2d 936, 944 (Tenn. App. 1984). In this case, the evidence showed that Mustin and Terry had a history of doing business with nothing more than a handshake, that the check was for an unusual amount ($99,000.05), that the amount corresponded exactly to the

3

amount needed by Mustin to close the real estate deal, that the check was made out to the lawyer in charge of closing that deal, that Terry's name was on the check as its remitter, and that the check was used to close Mustin's deal. The testimony of Mustin's widow presented some evidence of a debt, but the trial court found this testimony left many questions unanswered and "highly questionable." The trial court had the opportunity to view the witnesses' demeanor, and we defer to the trial court's determination of credibility. *Thompson v. Creswell Indus. Supply, Inc.*, 936 S.W.2d 955, 957 (Tenn. App. 1996); *Lindsey v. Lindsey*, 930 S.W.2d 553, 556 (Tenn. App. 1996).

Viewing the evidence as a whole, even without considering Terry's testimony regarding the transaction with Mustin, we find the presumption of payment of a debt has been "overcome by proof of circumstances from which it may fairly and reasonably be inferred that the transaction was in fact a loan." *Williams*, 6 Tenn. App. at 218. Based on this holding, the issue regarding whether Terry's testimony was inadmissible is pretermitted. We affirm the decision of the trial court.

The decision of the trial court is affirmed. Costs are assessed against Appellant, for which execution may issue if necessary.

_____
HOLLY KIRBY LILLARD, J.


**CONCUR:**


_____
**ALAN E. HIGHERS, J.**


_____
**DAVID R. FARMER, J.**

4