### INSURANCE CO. *v.* SHOEMAKER.

(*Jackson.* May 25, 1895.)

1. EVIDENCE. *Of husband and wife incompetent, when.*

Husband and wife are incompetent, in her suit against the husband's creditors to set up a resulting trust in his land, to prove an agreement between themselves as to the contemplated purchase of the land involved, as to how it was to be paid for, and as to how the title should be taken. Evidence of this character falls within the exception of the statute making parties in all civil actions competent to testify providing that "neither husband nor wife shall testify as to any matter that occurred between them by virtue of, or in consequence of, the marital relation." (*Post, pp. 74–83.*)

Code construed: § 4563 (M. & V.); § 3813 (T. & S.).

Cases cited and approved: Patton *v.* Wilson, 2 Lea, 101, 113; Orr *v.* Cox, 3 Lea, 621; Hyden *v.* Hyden, 6 Bax., 408; Brewer *v.* Ferguson, 11 Hun., 565; Kimbrough *v.* Mitchell, 1 Head, 540; Barker *v.* McAuley, 4 Heis., 424.

2. SAME. *Of husband and wife will not establish a resulting trust, when.*

The uncorroborated testimony of husband and wife, if admitted, is not sufficient to establish a resulting trust in the husband's lands in her favor as against his creditors. (*Post, p. 81.*)

Cases cited and approved: Gates *v.* Card, 93 Tenn., 334; Page *v.* Gillentine, 6 Lea, 240; Grotenkemper *v.* Carver, 9 Lea, 280; Hardison *v.* Billington, 14 Lea, 346; McCammon *v.* Petitt, 3 Sneed, 242; Sullivan *v.* Sullivan, 86 Tenn., 380.

3. SAME. *Insufficient to establish resulting trust.*

A resulting trust in the husband's lands is not established in favor of the wife, as against his creditors, by evidence that money was paid or sent to her by her brother with which to purchase a home, and that he examined the property, advised

the purchase, and was subsequently informed by letter that the property had been purchased, and that she had the deed for it; where it is shown the husband obtained possession of the money and paid it out and took the title of the land in his own name. (*Post, pp. 74–83.*)

4. SAME. *Of delivery of deed from husband to wife.*

Although neither husband nor wife can testify as to the delivery of a deed by him to her, she is competent to testify that it has been in her possession at all times since the alleged delivery. (*Post, pp. 84, 85.*)

5. SAME. *Same.*

, Proof of delivery of deed from husband to wife may be made by her testimony that it has been in her possession since its date, a period of several years, corroborated by proof of her statement that she had it, and claimed the land, and of the husband's statement that the land was hers. (*Post, pp. 84, 85.*)

6. SAME. *Same.*

And, in such case, the statements of husband and wife to third persons in reference to her possession of the deed and ownership of the land are competent to show how and under what title the property was held. (*Post, p. 85.*)

7. DEED. *Registration.*

A deed conveying lands from husband to wife is valid and effectual against his creditors, although its registration has been long delayed, if it was made originally in good faith, and withholden from registration without fraud, and actually registered before creditors had secured any lien upon the property. (*Post, pp. 83–85.*)

Cases cited and approved: Chester v. Greer, 5 Hum., 34; Birdwill v. Cain, 1 Cold., 301; Cowan, McClung & Co. v. Gill, 11 Lea, 674; Bank v. Walker, 14 Lea, 299.

8. COSTS. *Of unsuccessful attack on deed by creditors of maker.*

Creditors attacking a deed from a debtor to his wife as fraudulent, will not be relieved from payment of costs on failure to set it aside, although the deed was not registered until after the credit was extended, if it shows on its face that it was ex-

ecuted long prior thereto, and was registered before suit was instituted to impeach it. (*Post, pp. 85, 86.*)

---

FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. JOHN L. T. SNEED, Ch.

S. J. SHEPHERD and WM. M. RANDOLPH & SONS for Insurance Company.

THOMAS H. JACKSON for Shoemaker.

WILKES, J. These suits were brought against the firm of J. J. Shoemaker & Co., of which W. A. Sneed was a partner, to recover upon certain notes against the firm, and to set ' aside' a conveyance of certain real estate by W. A. Sneed to his wife, Jessie Fenton Sneed.

The Chancellor gave judgment on the notes against the partners, but declined to set aside the conveyance, and from his refusal to set aside the conveyance complainants appealed and have assigned errors.

Mrs. Sneed filed a cross bill in the progress of the causes, to which her husband, W. A. Sneed, was made a party defendant, alleging that the house and lot in controversy was bought by her funds, and under an agreement with her husband made prior to the purchase that her money should pay for

the same, and that the title should be taken in her name; that her money did pay for the house and lot, but that the title was taken to her husband instead of to her, and that she is entitled to hold the same under the doctrine of a resulting trust. She also alleges that on June 19, 1889, her husband executed and delivered to her a deed to the house and lot, which recites upon its face that it was for love and affection, and which she held and kept in her table drawer until December 9, 1893, when it was acknowledged by the husband, W. A. Sneed, and registered. Two days thereafter, the firm of which Sneed was a member made an assignment, and it appears that it, as well as the individual partners, are insolvent. Mrs. Sneed claims the property in controversy also under this conveyance, the prayer of her cross bill being that if the Court should be of opinion that the deed executed to her by her husband does not give her a title superior to the claims of complainants, then that the Court will decree a trust and equity in it superior to the right of complainants, by virtue and on account of the payment by her of the purchase money under an agreement with her husband that the title should be taken to her.

On the hearing, the fact that her money paid for the property, and that it was paid under an agreement with her husband that the title should be taken to her, was deposed to by both husband and wife, and they stated also that the deed of date June

19, 1889, was executed and delivered to her at the time it bears date, and that it had ever since been in her possession. It further appears from the record that when this deed was executed, the husband, W. A. Sneed, was not in debt, and was perfectly solvent.

The testimony of the husband and wife is excepted to as incompetent so far as it relates to transactions and conversations between themselves, the exceptions being specific to the numerous questions asked touching their transactions and conversations. The exceptions were, however, overruled in the Court below, and the testimony of the husband and wife was considered along with all the other testimony in the cause, the entire proof being substantially as follows:

H. W. Fenton, the brother of Mrs. Sneed, testified that he had in his hands, at one time, some $6,400 of money that belonged to his sister, Mrs. Sneed, derived from the rents of real estate devised to her by her father, and situate in Illinois; that in the spring of 1889 his sister requested him to send her this money, as she desired to invest it in a home at Memphis; that about April, 1889, he came to Memphis and delivered to his sister $4,000; that, before delivering the money to her, he was told by his sister and her husband that the money was to be invested in a home for her, and the title was to be taken in her name; that he examined the property and advised its purchase, and that the title

be taken to her, which the husband promised to do; that on his return home he sent his sister $2,400 additional in exchange, and soon thereafter, in June, 1889, his sister wrote him that the house and lot had been purchased and title taken to her, and that she had the deed. And it was the understanding in the family that his sister was to furnish the money to buy the house, .and it was to be hers, and that W. A. Sneed had never claimed any right or interest in his wife's property, all of which passed through his hands as her agent, and as administrator of her father's estate.

Jesse R. Long testified that he wrote the deed from W. A. Sneed to his wife, June 19, 1889, at the request of the husband, W. A. Sneed, and his brother, W. M. Sneed, and that it was dictated by W. A. Sneed, and that both W. A. and W. M. Sneed told him at the time that the equitable title was in Mrs. Sneed, as her money had paid for it.

It further appears that a memorandum of the purchase by W. A. Sneed from Hannah was made at the time it was bought originally, and that Mr. and Mrs. Sneed, after the purchase, at one time mortgaged the property to the Jarvis Conklin Company for money for the use of W. A. Sneed, but these matters need not be further noticed, as, in our opinion, they throw no light on the matter in controversy in this cause.

Mrs. Sneed testifies that she furnished all the money that was used in the purchase and improve-

ment of the property; that it was agreed before the purchase, between her and her husband, that the property should be purchased for her; that she would furnish the money, and that the property should be hers, and title taken in her name; that the deed of date June 19, 1889, was executed and delivered to her at about the time it bears date, and had ever since been in her possession; that she did not know that it had not been registered until a few days before it was registered, and that she supposed it was complete and perfect, and that it was not intentionally withheld from registration.

W. A. Sneed testifies to substantially the same facts, and, in addition, that the title was originally taken to him pending the settlement of some supposed defects in the title, and when these were cleared up he made the deed to his wife of date June 19; that at that date he was not in debt, was worth $15,000, and was not contemplating going into business; that his financial troubles came on afterwards; that the deed of June 19 was executed to carry out his previous agreement with his wife, and that its real consideration was the payment by her of the purchase money, and not love and affection, as the deed recites.

It is further developed in the testimony that the funds sent by H. W. Fenton, the brother of Mrs. Sneed, to her, were handed over to her husband and deposited by him in bank to his credit, and that $4,000 of the amount was temporarily loaned

by him to his brother, W. M. Sneed, and the payments made to Mrs. Hannah, from whom the house and lot was bought, were in checks signed by W. A. Sneed, the husband. As an explanation of this, it is stated that the funds were then temporarily handled by the husband pending the negotiation and consummation of the trade for the property, and with no intention of its being reduced into his possession as his property by virtue of the martial right. Two notes were executed by him for the deferred payments, due at twelve and eighteen months, and these were paid with his checks, the funds, however, having been previously handed or paid over to him by his wife.

All the testimony of the husband and wife as to transactions and conversations between themselves was excepted to, but the exceptions were overruled. Portions of the testimony of H. W. Fenton were excepted to, especially his statement as to the purpose for which he sent the money to his sister; also, his statements in regard to the letter received from his sister, in which she wrote that she had bought the property, and that the deed was in her possession; also, his statements as to conversations between the husband and wife in his presence, and with him as to the contemplated purchase of the property, and how it was to be held; but all exceptions were overruled and all the testimony was heard and considered in the Court below.

The assignments of error are, in substance, that

there is not sufficient competent evidence to set up a resulting trust in Mrs. Sneed, nor to show a delivery of the deed to her in 1889, and, in truth, the entire matter is an afterthought to preserve and keep the property in the hands of the wife after her husband had become insolvent, and an assignment by his firm was inevitable.

The rule is, that a resulting trust will not be set up by parol as against an innocent purchaser. *Gates* v. *Card*, 9 Pick., 341. Nor as against creditors, except by the clearest and most convincing proof. *McCannon* v. *Pettitt*, 3 Sneed, 242; *Sullivan* v. *Sullivan*, 2 Pick., 380, 381. And it cannot, as against third persons, be set up by the uncorroborated testimony of the husband and wife. *Gates* v. *Card*, 9 Pick., 341, and cases cited. In this case we have, in addition to the testimony of Sneed and wife, only the statements of Long and H. W. Fenton upon this point, and these statements alone are not sufficient to set up such trust. They are, however, amply sufficient if allowed as corroborative of the statements of Sneed and wife for this purpose.

By the Code (M. & V. Comp., § 4563, Acts of 1879, Ch. 200), it is provided: "In all civil actions in the Courts of this State, no person shall be incompetent to testify because he or she is a party to, or interested in, the issue tried, or because of the disabilities of coverture, but neither husband nor wife shall testify as to any matter that

occurred between them by virtue of, or in consequence of, the marital relations."

It is practically impossible to lay down any general rule to determine what matters occur between husband and wife by virtue of, or in consequence of, the marital relation, and are, therefore, forbidden by this statute to be testified to. It is evident that all secret, confidential disclosures and communications between the husband and wife the publication of which would betray conjugal confidence and trust, and tend to produce discord in the family, are prohibited. But matters and conversations that occur between husband and wife and third persons, or in the presence of third persons, and are not intended to be secret or of a confidential character, are clearly competent. The facts of each case must control, to a large extent, the rule in such case.

It has been held in a number of cases that the unsupported testimony of husband and wife, or either of them, is not sufficient to set up a resulting trust in land as against the creditors of the husband. *Page* v. *Gillentine*, 6 Lea, 240; *Grotenkemper* v. *Carver*, 9 Lea, 280; *Hardison* v. *Billington*, 14 Lea, 346; *Gates* v. *Card*, 9 Pickle, 341.

In all these cases, the question was as to the sufficiency of the proof, and in none of them was any objection made to the competency of the witnesses, or their statements.

The testimony not having been excepted to, its competency was not put in issue, and these cases

6—11 P

are not authority for the admissibility of such testimony.

We are of opinion that all transactions and conversations had between the husband and wife in relation to their own affairs, not in the presence of some third person, fall within the prohibition of the statute, and in this case the agreements made between them as to the contemplated purchase of the lot, as to how it should be paid for, and as to how the title should be taken, must be excluded, so far as they are based on the testimony of the husband or wife, or both. This, we think, is in accord with the former holdings of this Court in *Patton* v. *Wilson*, 2 Lea, 101, 113; *Orr* v. *Cox*, 3 Lea, 621; *Hyden* v. *Hyden*, 6 Baxter, 408; *Brewer* v. *Ferguson*, 11 Hum., 565; *Kimbrough* v. *Mitchell*, 1 Head, 540; *Barker* v. *McAuley*, 4 Heis., 424.

If this evidence of the husband and wife be excluded, as we hold it must be, there is not sufficient evidence in the record to sustain the transaction upon the ground of a resulting trust.

The case of *Barker* v. *McAuley*, 4 Heis., 424, cited above, was a suit against the personal representatives of a trustee to charge him with the trust assets. The widow of the trustee, who had no interest in the event of the suit, was offered as a witness, and it was proposed to prove by her the payment of the money to the husband as a part of the trust fund, the amount that was paid; that the husband handed her the money at the time, that it re-

mained in her possession, except a definite sum loaned to a certain person, and that she handed the identical money to the defendant, as the administrator of the husband.

This Court held that the testimony was properly excluded, and Judge Freeman said: "We, therefore, conclude that, on high grounds of public policy, which demand to be upheld and maintained as subserving the general social interest of the community, the wife was incompetent, and her testimony properly excluded."

Can the conveyance be sustained under the proof on any other ground? It was executed in June, 1889, but was not registered until December 9, 1893. Two days thereafter; the firm of Shoemaker & Co. made their assignment. The proof is entirely satisfactory that, at the date of its execution, the maker was not involved in debt, and at the time of its registration he was hopelessly involved and insolvent. The conveyance, upon its face, recites that it was made for love and affection; the proof strongly indicates that it was made in consideration of the funds of the wife previously received, and other funds thereafter to be received.

We think it immaterial to determine whether it was made solely for love and affection or because of funds of the wife invested, or on both grounds. There can be no question but that it was executed in June, 1889, and there is nothing in the proof tending to show that it was withheld from registra-

tion for any fraudulent or improper purpose, but rather from ignorance or inadvertence. If the deed was, in fact, delivered to the wife in 1889, and intended then to take effect, it would have been good between the parties from that date, notwithstanding the delay in registering it.

The fact that the property was bought; that it was paid for by money derived directly or indirectly from the wife; that a deed was made by the husband conveying it to the wife in 1889; that this deed was withheld from registration until December 9, 1893, but was then registered, before the complainants filed their bills or fastened any specific lien on the property—all this is satisfactorially shown by evidence at once competent and sufficient outside of the statements of husband and wife. When disaster overtook the husband, in December, 1893, the equity of the wife to secure herself by registering her deed, previously made, was as great as that of the creditor who had innocently extended credit under the belief that the property belonged to the husband, there being no fraudulent purpose shown in withholding the registration. *Chester* v. *Greer*, 5 Hum., 34; *Bridwill* v. *Cain*, 1 Cold., 300, 303; *Cowan, McClung & Co.* v. *Gill*, 11 Lea, 674; *Bank* v. *Walker*, 14 Lea, 299. As to the delivery of the deed, we are of opinion neither husband nor wife was competent to prove such delivery by the husband to the wife. It is not shown that this delivery was made in the presence of third

persons, when, under some of the authorities, such delivery would not be a confidential transaction or matter occurring between them by virtue of, or in consequence of, the marital relation, and would be competent to be shown. 1 Wharton on Evidence, § 427. But while we hold that neither husband nor wife could, under the statute, prove the delivery of the deed in 1889 by the husband to the wife, still the wife could prove, as an independent fact, that the deed had been in her possession from the date it was executed in 1889 until it was registered in 1893, without regard to the person from whom she obtained it. We think, also, this statement, as well as the statement made in the letter from the wife to her brother soon after the purchase, that the property had been bought for her, and the deed made in her name, and that it was in her possession, is competent to show how and under what claim and title she was claiming and in possession of the property, and the statements of the husband to Fenton, the brother-in-law, are also competent to show how and under what title the property was to be held. This evidence, we think, is competent and sufficient to prove delivery of the deed to the wife, and holding under it by her from 1889 to 1893, and, whether we treat it as a voluntary deed or one on valuable consideration, it is sufficient to warrant the result reached by the Chancellor. His decree is affirmed, with costs.

It is insisted that, under the facts, complainants

ought not, in any event, to pay costs, inasmuch as the property, until the deed was registered, was apparently that of the husband, and they were therefore induced to extend him credit, which otherwise he could not have obtained. This is, no doubt, true, but costs are the incidents of the suit, and the suit was brought after the deed was registered, which showed on its face that it was executed in 1889, before complainants' debts originated. Complainants must be considered as taking their chances to set aside such deed, and, being unsuccessful, must pay costs.