Crane & Co. v. Hall.

CRANE & CO. *v.* W. L. HALL *et al.*

(*Jackson.* April Term, 1919.)

1. BILLS AND NOTES. Consideration. Collateral security for pre-existing debt. ''Value.''

Under Negotiable Instruments Law, section 25, providing that an antecedent or pre-existing debt constitutes value, and section 27, providing that a holder who has a lien on the instrument shall be deemed a holder for value to the extent of his lien, a pre-existing debt is "value," even though the instrument is transferred merely as collateral security for such debt. (*Post, pp.* 560, 561.)

Acts cited and construed:  Acts 1899, ch. 94.

Cases cited and approved:  Birket v. Elward, 68 Kan., 295;  Exchange Nat. Bank v. Coe, 94 Ark., 387;  German-American Bank v. Wright, 85 Wash., 460.

2. BILLS AND NOTES. Innocent holders. Security for pre-existing debt.

Where defendant executed a note and mortgage covering land, title to which was taken in his name merely for the convenience of others actually interested, and such note was negotiated contrary to agreement, and came into the hands of plaintiff prior to maturity, without knowledge of any infirmity or defense, plaintiff was an innocent holder in due course, even though the note was taken as security for a pre-existing debt owing by the person who negotiated it in view of Negotiable Instruments Law, sections 25, 27. (*Post, pp.* 561, 562.)

Case cited and approved:  Trust Co. v. McDougald, 132 Tenn., 323.

3. FRAUDULENT CONVEYANCES. Evidence. Presumptions.

A deed of property to grantor's wife for a recited consideration of $5, love, and affection, shortly after the foreclosure of a trust deed executed by grantor to secure a note, leaving a large balance still due, was presumptively fraudulent. (*Post, p.* 562.)

Crane & Co. v. Hall.

4. WITNESSES. Matters occurring in consequence of marital relation.
In an action on a note and to set aside a transfer by defendant to his wife as fraudulent, evidence by defendant and his wife that the consideration in the deed was recited as being nominal merely by error of the draftsman, and that defendant was largely indebted to his wife, was properly excluded as a matter occurring between husband and wife, by virtue of or in consequence of the marital relation, under Thompson's Shannon's Code, section 5596. (*Post, pp.* 562, 563.)

Case cited and approved: Insurance Co. v. Shoemaker, 95 Tenn., 72.

Code cited and construed: Sec. 5596 (T.-S.).

5. FRAUDULENT CONVEYANCES. Evidence. Matters occurring between husband and wife.
Testimony of a husband and wife as to matters occurring between them by virtue of, or in consequence of, the marital relation, even when admitted without objection, is insufficient to set up a contract between them to the prejudice of the husband's creditors, unless corroborated. (*Post, p.* 563.)

Cases cited and approved: Gates v. Card, 93 Tenn., 334; Hardison v. Billington, 82 Tenn., 346; Grotenkemper v. Carver, 77 Tenn., 280; Page v. Gillentine, 74 Tenn., 240; Hyden v. Hyden, 65 Tenn., 406.

6. WITNESSES. Competency. Husband and wife. Statutes.
Acts 1915, chapter 161, making a husband and wife competent witnesses for or against each other, relates only to criminal cases, and even in such cases they may not testify as to their dealings had apart from others. (*Post, pp.* 563, 564.)

Acts cited and construed: Acts 1915, ch. 161.

Case cited and approved: McCormick v. State, 135 Tenn., 128.

7. WITNESSES. Competency. Husband and wife. Statute.
Married Woman's Emancipation Act of 1913 does not change the rule of evidence that matters occurring between husband and wife in consequence of the marriage relation are inadmissible as against the husband's creditors. (*Post, p.* 564.)

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.—
Hon. F. H. HEISKELL, Chancellor.

JACKSON, NEIL & McREE, for plaintiffs.

EWING, KING & KING and LOWELL W. TAYLOR, for de-
fendants.

MR. JUSTICE GREEN delivered the opinion of the court.

The defendant Hall had a brother-in-law named Jones,
who was in the real estate business. Jones had a busi-
ness associate named Harris. Jones and Harris, on the
one hand, and defendant Hall, on the other, entered
into an arrangement whereby a certain lot in Memphis
was purchased and the title taken in the name of Hall.
Harris arranged for payment of the purchase price of
the lot. Defendant Hall thereupon executed his note
for $3,500, payable to his own order, and indorsed this
note in blank, and at the same time Hall executed a
mortgage upon the lot to secure the payment of said
note. Hall turned the note and the mortgage over to
his brother-in-law, Jones, with the understanding that
out of the proceeds of the note a house was to be
erected upon the lot. Jones and Harris were to sell the
property after the house was built. Jones says that he
and Harris were to get only their commission as real
estate agents for the sale, and that defendant Hall was

to get any profit that was made on the transaction. Hall says that he was to get nothing whatever out of the deal and only entered into it as a matter of accommodation to his brother-in-law, Jones. It seems to have been considered by all parties that the transaction could be handled better with the title to the property standing in the name of defendant Hall.

Jones' associate, Harris, had a creditor named Cockrill. Instead of using the Hall note to raise money to build a house on the lot referred to, Harris turned said note over to Cockrill, to whom he was indebted, as collateral security for Harris' own note executed to Cockrill.

Cockrill was indebted to the complainants, Crane & Co., and on account of his indebtedness turned over to Crane & Co., the note that Harris had made to him, along with the Hall note as collateral.

Harris' note, which thus came into the hands of the complainants, was not paid at maturity, and the complainants proceeded to foreclose the trust deed securing defendant Hall's note, which Crane & Co. had taken as collateral to the Harris note. The property was sold, and the proceeds credited on the Hall note. This suit is brought by complainants to recover balance due on the Hall note, and to set aside as fraudulent a certain conveyance of other property made by the defendant Hall to his wife. There was a decree for the complainants below, from which defendants Hall and wife have appealed.

It is insisted for the defendants that complainants are not holders of the Hall note for value and in due course. It is said that Crane & Co. took this Hall note as col-

lateral security for a past-due indebtedness, and are therefore not innocent holders. It is said that the case presents a clear diversion of the Hall note by Harris, and that Harris himself could not recover on it and complainants, not being innocent holders, stand in the same plight that Harris would occupy.

At one time this defense would have been good. We think it is not available, however since the passage of the Negotiable Instruments Law. Chapter 94 of the Acts of 1899.

Section 25 of that statute is in these words:

"Value is any consideration sufficient to support a simple contract. An antecedent or preexisting debt constitutes value, and is deemed such whether the instrument is payable on demand or at a future time."

Section 27 is in the following language:

"Where the holder has a lien on the instrument, arising either from contract or by implication of law, he is deemed a holder for value to the extent of his lien."

Under the sections above quoted a preexisting debt is value, even though the instrument is transferred merely as collateral security for such debt. *Birket* v. *Elward*, 68 Kan., 295, 74 Pac., 1100, 64 L. R. A., 568, 104 Am. St. Rep., 405, 1 Ann. Cas., 272; *Exchange National Bank* v. *Coe,* 94 Ark., 387, 127 S. W., 453, 31 L. R. A. (N. S.), 287, 21 Ann. Cas., 934; *German-American Bank* v. *Wright,* 85 Wash., 460, 148 Pac., 769, Ann. Cas., 1917D, 381.

The foregoing cases are all annotated, as reported in the Annotated Cases above cited, where many other like decisions are collected. There appears to be little or no conflict in the authorities in jurisdictions where Ne-

gotiable Instruments Law prevails, except that there is some uncertainty in the decisions of the intermediate appellate courts in New York. The New York Court of Appeals has not passed on the matter so far as we are advised.

This Hall note came into the hands of the complainants prior to its maturity, and there is no suggestion that complainants had any knowledge of any infirmity therein or defense thereto. We are therefore of opinion that complainants are innocent holders of this note in due course, even though it was taken as security for a pre-existing debt.

It is insisted that said note was taken as security for a worthless debt, and it is accordingly urged that the complainants are not for this reason holders for value in due course. For this proposition we are referred to *Trust Co.* v. *McDougald,* 132 Tenn., 323, 178 S. W., 432, L. R. A., 1917C, 840.

The proof does not justify the contention that the complainants' claim against Cockrill was worthless. The principle stated in *Trust Co.* v. *McDougald* is only to be applied in like cases. Among other peculiarities, that case was one of miserable fraud, to which the holder of the note sued on was a party. As stated before, the complainants here were entirely without notice of any wrongdoing on the part of Cockrill or Harris, from whom the Hall note was taken.

It is also contended for defendants that, if complainants be innocent holders of the Hall note and entitled to judgment thereupon, nevertheless they are not entitled to have set aside the conveyance from Hall to his wife.

141 Tenn.—36

The land transferred by Hall to his wife was inherited by the former a few months before this suit was brought from his mother's estate. Very shortly after complainants foreclosed the trust deed given to secure the Hall note, which they held as collateral, leaving a large belance still due on said note, Hall made a deed of the property so inherited from his mother to his wife for a recited consideration of $5 and love and affection.

This deed is, of course, *prima-facie* fraudulent as against Hall's creditors. In the answer filed by Hall and wife to complainants' bill they insisted that he was indebted to her in a sum exceeding $1,500, the value of the inherited property, and that said deed was made as a matter of fact by Hall to reimburse his wife for loans to him, which he had contracted to repay.

Hall and wife testified at length as to these loans and as to the alleged agreement to repay on the part of Hall, and that the nominal consideration mentioned in the deed was so recited by error of the draftsman.

The chancellor excluded this testimony and in so doing was right.

Section 5596 of Thompson's Code is as follows:

"In all civil actions in the courts of this State, no person shall be incompetent to testify because he or she is a party to, or interested in, the issue tried, or because of the disabilities of coverture, but all persons, including husband and wife, shall be competent witnesses, though neither husband nor wife shall testify as to any matter that occurred between them by virtue of or in consequence of the marital relation. (1869-70, chapter 78, section 1; 1879, chapter 200, section 1.)"

The advances to the husband and his alleged agreement to repay the wife was a "matter that occurred between them by virtue of, or in consequence of, the marital relation," and consequently a matter concerning which neither could testify.

This court has declared "that all transactions and conversations had between the husband and wife in relation to their own affairs, not in the presence of some third person, fall within the prohibition of the statute" and their testimony concerning such things must be excluded. *Insurance Co.* v. *Shoemaker,* 95 Tenn., 72, 82, 31 S. W., 270, and cases cited.

Even in cases where the testimony of the husband and wife as to such matters has been admitted without objection, it has been held insufficient to set up a contract between them to the prejudice of the husband's creditors, unless corroborated. *Insurance Co.* v. *Shoemaker,* supra; *Gates* v. *Card,* 93 Tenn., 334, 24 S. W., 486; *Tardison* v. *Bilington,* 82 Tenn. (14 Lea), 346; *Grotenkemper* v. *Carver,* 77 Tenn. (9 Lea), 280; *Page* v. *Gillentine,* 74 Tenn. (6 Lea), 240; *Hyden* v. *Hyden,* 65 Tenn. (6 Baxt.), 406.

This is no real corroboration of the testimony of defendants Hall and wife in this record. There is only some proof from the notary who prepared the deed that they told him it was made in settlement of indebtedness owing by Hall to his wife.

Chapter 161 of the Acts of 1915, making husband and wife competent witnesses for or against each other, relates only to criminal cases, and even in those cases they may not testify as to their dealings and conversa-

tions had apart from others.  *McCormick* v. *State,* 135 Tenn., 218, 186 S. W., 95 L. R. A., 1916F, 382.

It has been suggested that chapter 26 of the Acts of 1913, the so-called Married Woman's Emancipation Act, is effective to change the rule of evidence under discussion.

We do not think so.  The act of 1913, according to its title, was intended to remove the married woman's disabilities incident to coverture; that is to say, the especial disabilities of the wife.

If the prohibition against the husband and wife testifying as to their private transactions be regarded as a disability, still it is not a disability of the wife, properly speaking, but a joint disability, resting upon both husband and wife.

The act of 1913 was designed to remove only such disabilities as were peculiar to a married woman.  It did not purport to enlarge the husband's rights, or to reach disabilities common to husband and wife, and to give the statute such a construction would unduly extend its scope.

The foregoing observations render a detailed discussion of the assignments  of error unnecessary, and  the decree of the chancellor is affirmed.