STATE ex rel. v. CALDWELL et al.—111 S. W. (2d) 377.

Middle Section.    June 26, 1937.

Petition for Certiorari denied by Supreme Court, Dec. 17, 1937.

W. M. Fuqua, of Nashville, for appellant Mrs. Caldwell.

Roy Beeler, Attorney General, Nat Tipton, Assistant Attorney General, and Bass, Berry & Sims, of Nashville, for the State of Tennessee.

CROWNOVER, J. This is a contest over the proceeds of the sale of a racing mare, named "Lady Broadcast," amounting to the sum of $25,500, on a petition filed by Mrs. Caldwell in the above-styled cause.

The original bill in this cause was filed by the State of Tennessee against Rogers Caldwell for the purpose of impounding and holding the proceeds of a sale of race horses belonging to Rogers Caldwell pending the outcome of various suits brought by the State against him as surety upon certain depository bonds for the Bank of Tennessee and other banks. The bill was filed on December 5, 1930, and injunction was issued on that date restraining the auctioneer from

paying over the proceeds of the sale which was had on that date to Rogers Caldwell.

The horses were sold for $78,965.59. Of this amount $25,500.00 was the proceeds of the mare, Lady Broadcast.

On October 29, 1931, an agreed decree was entered in the cause decreeing about one-third of the proceeds of the sale to Rogers Caldwell and the balance to the State of Tennessee.

On December 9, 1932 (two years after the sale of the horses), Mrs. Margaret T. Caldwell, the wife of Rogers Caldwell, filed an intervening petition in the cause seeking to recover from the receiver $25,500, alleging that she was the owner of the mare.

The State answered her petition, alleging that the mare was the property of Rogers Caldwell; that he was insolvent at the time of the alleged gift to Mrs. Caldwell; that she was guilty of laches in failing to set up her claim before the decree affecting the proceeds was entered, and was estopped to set up such claim.

The chancellor found that Rogers Caldwell did not give or sell the mare to Mrs. Caldwell; that he was insolvent at the time of the alleged transfer, and, if a gift was made, it was invalid, and, if a sale, it was without adequate consideration; that Mrs. Caldwell was guilty of laches in presenting her claim, and also was estopped to set the same up; and he dismissed her petition.

She excepted to the chancellor's decree and appealed to this court and has assigned a number of errors, which are, in substance, as follows:

The chancellor erred:

(1) In not holding that Mrs. Caldwell was the owner of Lady Broadcast, and in not decreeing the proceeds of the sale to her.

(2) In not at least decreeing that Mrs. Caldwell was entitled to $10,000 of the proceeds, being the value of the saddle mare, Gladys LeRose.

(3) In holding that Rogers Caldwell and Caldwell and Co. were insolvent.

(4) In holding that Mrs. Caldwell was guilty of laches and was estopped to set up claim to the proceeds of the mare.

(5) In excluding testimony as to conversations and transactions between Rogers Caldwell and his wife about the horses.

1 and 2. The principal question to be determined is whether Rogers Caldwell gave or sold the mare to Mrs. Caldwell.

When the case came on for trial before the chancellor, both Mr. and Mrs. Caldwell testified that he gave her the mare. Most of this testimony was objected to on the ground that it was testimony about transactions between husband and wife (Code, sec. 9777), and the objections were sustained by the chancellor and the testimony excluded. But there was some evidence in the record that he gave her

the mare, but this testimony of husband and wife was not corroborated by other creditable proof, so it was not sufficient to establish the gift. Robertson v. Wade, 17 Tenn. App., 457, 466, 68 S. W. (2d), 487, and cases cited. And there was no evidence that the mare was delivered to her, so the gift was not completed. 28 C. J., 636, 638.

■ After the trial, and before the chancellor had rendered his decree, the petitioner moved the court to be allowed to take the deposition of Charles W. Caldwell, a brother of Rogers Caldwell, which motion was granted, the hearing was postponed, decree was entered permitting the taking of the deposition, and a decree was entered allowing the petitioner to amend her petition so as to allege that she received Lady Broadcast in consideration of her giving her saddle mare, "Gladys LeRose," to Elsie Caldwell, a daughter of Charles W. Caldwell.

Charles W. Caldwell testified:

"I told Rogers and Margaret that my daughter kept worrying me about whether she was going to receive this horse and I wanted to know what to tell her, and Rogers turned to his wife and said 'was it all right to give Gladys LeRose to Elsie' and she said 'it was, provided you give me this horse, Lady Broadcast, the one you said you would give me' and Rogers told her that he was then giving her this horse, and Margaret said 'Well then I will give Gladys LeRose to Elsie' and Rogers said it was agreed then, and I went and told my daughter that the horse was hers. . . .

"Well, Rogers asked his wife, 'was it all right to give Gladys LeRose to Elsie Caldwell' and she replied that it was, provided he carried out his agreement to give her the race horse, Lady Broadcast, in return, in consideration that she, Margaret Caldwell, give my daughter, Elsie Caldwell, Gladys LeRose, and Rogers said 'That is understood and I give you Lady Broadcast and you give Gladys LeRose to Elsie.'"

This testimony of Charles W. Caldwell was corroborative of the promise of Rogers Caldwell to give Mrs. Caldwell the mare but not of the delivery of the mare.

This testimony attempts also to show a consideration for the transfer of the horse. But this evidence does not establish a sale of the horse to Mrs. Caldwell; there is no evidence of the intention on the part of Rogers Caldwell to sell the mare to Mrs. Caldwell or of her intention to buy it. The saddle mare that belonged to Mrs. Caldwell was worth $10,000 and Lady Broadcast was worth $25,000, but there was no agreement that the saddle mare would be considered part payment for Lady Broadcast. This was in no sense a sale of Lady Broadcast; if there was a transfer of the mare, it was a gift (28 C. J., 623, 624, sec. 9), but it was not consummated by delivery.

■ There is no evidence that the mare was delivered to Mrs. Cald-

well except the testimony of Rogers Caldwell, which is incompetent because not corroborated. Robertson v. Wade, supra.

Therefore the assignments of errors on this proposition must be overruled.

■ ■ 3. We think, after an examination of the evidence, that Rogers Caldwell, Caldwell & Co., and the Bank of Tennessee were insolvent at the time he stated he delivered the mare to Mrs. Caldwell. He claims to have delivered the mare to her only a few days before Caldwell & Co. ceased to do business.

· The question of insolvency of an individual or company that owns stocks and bonds, where the values fluctuate, is always perplexing. In this case it is insisted that Caldwell & Co. owned some stock in the Spur Oil Company which was sold by the receiver for $30,000 but is now worth $2,000,000. It sometimes happens that companies strike oil and the stock becomes worth a great deal of money, but there are thousands of instances where companies and individuals do not strike oil. The only way to tell whether a company or individual is solvent or insolvent at a given time is to take into consideration the value of all the property on the market at that time, that is, the valuation placed upon such property should be the price it would bring in the open·market taking into consideration the fact that the owner would sell, but did not have to sell, and the buyer would buy, but did not have to buy. Alloway v. Nashville, 88 Tenn., 510, 13 S. W., 123; 66 C. J., 418. And, taking all of his property together, if he is unable to meet his obligations as they mature in the usual course of business, he is insolvent. Minton v. Stahlman, 96 Tenn., 98, 108, 34 S. W., 222.

Rogers Caldwell was surety on various bonds to secure payment of deposits made by the State of Tennessee in the Bank of Tennessee, which bonds aggregated about $5,000,000. When the Bank of Tennessee went into the hands of a receiver, the State had on deposit $3,418,354.08, of which it received $750,000. Rogers Caldwell as surety is indebted to the State in an amount in excess of $2,668,000, and admits that he is now insolvent. He and T. G. Donovan testified that Caldwell & Co. was not insolvent when it went into the hands of a receiver. But the reports filed of its assets and liabilities show that it was insolvent. It paid the creditors only one-half of 1 per cent.

■ A gift made when the donor is insolvent is invalid as to his creditors. Gibson's Suits in Chancery, 4th Ed., sec. 1009.

· ■ ■ 4. While·it is not shown that Mrs. Caldwell knew that Rogers Caldwell made a settlement with the State on the proceeds of the horses, she knew something about the affairs of Rogers Caldwell, the Bank of Tennessee, and Caldwell & Co. They were all insolvent and their affairs were being wound up for the benefit of their creditors; and her ·delay for two years to assert this claim, during which time the agreed decree was entered and Rogers Caldwell received one-

third of the proceeds of the sale of the horses, estops her from now claiming the proceeds of the mare. She was also guilty of laches.

5. We think all the testimony about the conversations and transactions between Rogers Caldwell and his wife, not made in the presence of a third person, are inadmissible, and the chancellor was correct in excluding such evidence. ` Robertson v. Wade, supra. But the evidence as to the ownership and possession of the mare, which amounted to mere statements of fact, was admissible (Insurance Co. v. Shoemaker, 95 Tenn., 72, 31 S. W., 270), and the assignments of errors going to this proposition must be sustained. But this evidence of itself is not sufficient to establish title in her.

The burden of proof was upon Mrs. Caldwell to establish her title to the mare, and we think that she has failed to carry that burden. Robertson v. Wade, supra; Gibson's Suits in Chancery, 4th Ed., sec. 443.

The determinative assignments of errors having been overruled, the decree of the chancellor dismissing the petition is affirmed. The costs of the cause, including the costs of the appeal, are decreed against Mrs. Caldwell and the sureties on her appeal bond.

Faw, P. J., and Felts, J., concur.