MARSH v. GALBRAITH.—216 S. W. (2d) 968.

Eastern Section.   Dec. 10, 1948.

Petition for Certiorari denied by Supreme Court, Jan. 17, 1949.

Ambrose & Wilson, of Knoxville, for appellant.

Norman B. Morrell and Joel H. Anderson, both of Knoxville, for appellee.

McAMIS, J.   E. H. Marsh, Trustee in Bankruptcy of J. J. Galbraith, filed the bill herein against Elizabeth P. Galbraith, wife of the bankrupt, charging that the de-

fendant, within one year prior to the filing of the bankruptcy petition, fraudulently procured a deed conveying to her Lots 400, 404 and 408 Temperance Street in Knoxville, Tennessee. The bill charges specifically that the lots rightfully belonged to the bankrupt and that the defendant paid nothing for them.

The defendant, Mrs. Galbraith, filed a plea in abatement and an answer in which she denied all the material allegations of the bill, set up affirmatively that she had paid $1,000 of her own funds for the lots which sum she had obtained a few days previously from the sale of a lot belonging to her; that her husband, the bankrupt, never had title to the lots and, in fact, had no interest in the lots except that he had an option from the owner to purchase them along with three other lots on Mulvaney Street for $14,000; that, although the bankrupt had a buyer for the Mulvaney Street lots at $13,250, he was financially unable to pay a real estate commission of $250 on the sale of the Mulvaney Street lots and a balance of $750 due the owner; that, finding himself in this plight, the bankrupt suggested that she, the defendant, purchase the Temperance Street lots at $1,000 which she did, paying cash therefor to the owner, Mr. Van Gilder.

The Chancellor, in a well considered opinion, found that Mrs. Galbraith received a considerable sum of money from the estate of her mother and had available, in September, 1946, $950 in cash, derived from the sale of a lot, to which she added $50 and which she turned over to her husband who paid $750 to Mr. Van Gilder, the owner of the lots, and $250 to a real estate agent; that J. J. Galbraith had previously tried to sell the property but without success; that the time was running out on his option; that the offer of the prospective purchaser for the Mulvaney Street lots at $13,250 was subject to withdrawal at

any time; that Mr. Galbraith was insolvent and without funds which he could have used to pay the $1,000 needed to exercise the option and pay commissions; and finally that, apart from the efforts of Galbraith in completing the transactions, the option had no value and that the creditors cannot complain because the debtor did not continue to work for the purpose of injecting value into the option. Accordingly, the bill was dismissed and the present appeal by the Trustee in Bankruptcy resulted.

The bankrupt, J. J. Galbraith, a skilled and experienced real estate dealer, by reason of losses about 1929, became involved in debt to the extent of approximately $200,000 which remained unpaid in September, 1946. Between 1929 and 1946 he was physically incapacitated and inactive but, on August 27, 1946, for $1 consideration, he obtained an option from Rogers Van Gilder for six lots, three on Mulvaney Street and three on Temperance Street. The option, running to Galbraith or his assigns, was for a period of thirty days. The option price was $14,000 cash. Galbraith immediately began looking for a purchaser for the lots but, being unable to dispose of them himself, he employed Mr. Schmid, another real estate dealer, to assist him in disposing of them. Mr. Schmid soon thereafter obtained an offer from Mr. McMillin for the Mulvaney Street lots at $13,250. An attempt was made to interest Mr. McMillin also in the Temperance Street lots but he refused to buy them or even to look at them. Mr. Galbraith also endeavored to find a purchaser for the six lots at $15,000, hoping to realize a profit of $1,000, but was unable to do so.

Galbraith testified in effect that, having no funds of his own with which to exercise the option, he permitted his wife to take over the option which resulted in her acquisition of the three Temperance Street lots for any out-

lay of $1,000. On September 12, 1946, Van Gilder conveyed the Temperance Street lots to Mrs. Galbraith and, on the same date, conveyed the Mulvaney Street lots to McMillin. On that date the lots acquired by Mrs. Galbraith had a market value of between $3,000 and $6,000. It is thus apparent that the bankrupt, if he had the necessary funds available and had chosen to do so, could have made a profit of several thousand dollars and that this potential profit has passed into the hands of the defendant, his wife. There is no proof, however, that a thirty day option on the six lots at a price of $14,000 cash had any market value on September 12, 1946.

There is no proof that the optionee himself had any funds available for use in meeting the terms of the option. There is some proof that when he was adjudged a bankrupt several months later he had stock valued at $1,500 and a policy of life insurance but, in view of his involved financial condition, it is doubtful if he could have borrowed $1,000 on the stock and there is no showing that he could have borrowed this sum on his policy. Under such circumstances, was his action in giving his wife, without consideration, the benefit of the option fraudulent and void as to creditors?

██ An option confers on the optionee the right to purchase property within the stipulated time subject to the terms and conditions of the option. This right may or may not have value depending on the price in relation to value and the ability of the optionee to meet the terms of the option. If it has value it is an asset within the meaning of the Uniform Fraudulent Conveyance Act and may be the subject of a fraudulent conveyance. Code, section 7271. If made without a fair consideration and the conveyor is insolvent or is thereby rendered insolvent, Code, section 7274, or is made execution proof, Citizens

Bank, etc., v. White, 12 Tenn. App. 583. it is voidable, without regard to fraudulent intent.

In this case, admittedly, no consideration for the transfer of the benefit of the option passed to the debtor. There is no question but that he was insolvent. But we do not think the creditors have suffered any injury of which they can complain. Even if the debtor had funds which he could have converted into real estate by exercising the option, he was not compelled to do so. Nor can the creditors complain because the debtor failed to continue his efforts to make the option yield a profit by finding a purchaser. Unwillingness of a debtor to work gives the creditor no ground for legal complaint. Glasgow v. Turner, 91 Tenn. 163, 18 S. W. 261. The debtor invested nothing and creditors were deprived of nothing when the option was acquired. They lost nothing when it was transferred unless it had a market value independent of the future efforts of the debtor to make it valuable though it may be that the creditors could have claimed the benefit of the option before it expired by tendering the option price. There is no proof that they were deprived of this right by secrecy or any artifice employed by the debtor and his wife.

The rule is that in order that a conveyance or transfer may be attacked as fraudulent and void as against creditors, it is necessary that prejudice to their rights has resulted. 37 C. J. S., Fraudulent Conveyance, section 61, p. 905. It is necessary that the creditor show that the transfer under attack deprived him of the right to subject the property transferred to the payment of his debt. This, we think, complainant failed to show and the bill was properly dismissed.

It is insisted the Court erred in overruling objection to the testimony of Galbraith and defendant based

upon the insistence that it was confidential and incompetent under Code, section 9777, as relating to a transaction growing out of the marital relationship. The testimony of defendant that she invested $1,000 of her own money and Galbraith's testimony that he used none of his own funds in exercising the option were independent facts about which they could testify without violating the statute. Insurance Co. v. Shoemaker, 95 Tenn. 72, 85, 31 S. W. 270; State ex rel. v. Caldwell, 21 Tenn.App. 396, 111 S. W. (2d) 377.

It is unnecessary to decide whether evidence of conversations between them falls within the statute since the evidence referred to, if believed, is sufficient even if, as insisted, the burden of proof is upon defendant by reason of the affirmative allegations of the answer and circumstances relied upon as badges of fraud.

It is insisted that the unsupported testimony of the husband and wife is insufficient as a matter of law to sustain the conveyance of the lots to defendant. Insurance Company v. Shoemaker, 95 Tenn. 72, 31 S. W. 270 and State ex rel. v. Caldwell et al, 21 Tenn.App. 401, 111 S. W. (2d) 377, are relied upon to sustain this contention. The first of these cases was a suit to establish a resulting trust in favor of the wife as against creditors of the husband who held the record title. It was held that the unsupported testimony of the husband and wife was insufficient to establish the trust over the terms of the deed conveying the property in fee to the husband, and on the basis of which creditors had extended credit. The facts of this case do not bring it within the holding in that case. State ex rel. v. Caldwell et al., holds only that the testimony of a husband and wife of an alleged gift by the husband to the wife is incompetent under the statute and, being both incompetent and unsupported, proved nothing.

In this case the transaction was not entirely between husband and wife but involved a third party from whom the wife acquired title. There was no gift of the property or delivery of possession from the husband to the wife claimed. We think the varying facts also distinguish this case from the Caldwell case.

The Chancellor saw and heard these two witnesses testify. There is nothing inherently improbable or suspicious in their testimony. Their testimony is uncontradicted and we think the Chancellor's findings are supported by the weight of the evidence, leaving out of consideration the testimony objected to as hearsay and made the basis of assignments of error.

Affirmed and remanded for the carrying out of the reference ordered by the Chancellor. Costs will be paid by the appellant and surety.

Howard and Goodman, JJ., concur.