CITIZENS & SOUTHERN NATIONAL BANK, Plaintiff,

v.

William A. AUER et al., Defendants.

No. CIV-2-77-55.

United States District Court,
E. D. Tennessee,
Northeastern Division.

May 2, 1978.

On Motion to Amend and for Additional Findings June 27, 1978.

---

## MEMORANDUM OPINION

NEESE, District Judge.

This is an *in rem* action to enforce the final judgment of a state court of Georgia, to set aside an allegedly fraudulent conveyance of real estate, and to attach that real estate. A bench trial was conducted on March 15, 1978.

The allegedly fraudulent transaction occurred on June 8, 1972 when the defendant Mr. William A. Auer conveyed his interest as a tenant by the entirety in certain real estate located in Sullivan County, Tennessee to his wife Mrs. Judith Auer. The plaintiff Citizens & Southern National Bank claims that this conveyance was fraudulent of Mr. Auer's creditors; Mr. and Mrs. Auer claim that it was free of fraud and a part of a settlement of marital differences between them which had resulted in their estrangement for a period of the immediately preceding several months. An initial problem is whether the testimony of Mr. and Mrs. Auer, respectively, as to the facts and circumstances surrounding the questioned conveyance, may be considered by the Court.

It is provided by a Tennessee statute, T.C.A. § 24–103, that neither a husband nor a wife may testify as to any matter that occurred between them by virtue or in consequence of their marital relation. The jurisdiction of this Court was invoked on the basis of the diverse citizenships of the plaintiff and the respective defendants and the requisite matter in controversy. 28 U.S.C. §§ 1332(a)(1), (c). Tennessee law is to be regarded as the rule of decision in this action, 28 U.S.C. § 1652, and the privilege of the spousal witnesses is to be determined in accordance with the law of Tennessee, Rule 501, Federal Rules of Evidence. The essential question is whether Mr. and Mrs. Auer

may waive their privilege and testify as aforementioned.

In construing the predecessor statute to T.C.A. § 24–103 nearly 60 years ago, the Tennessee Supreme Court treated the statute as having established a *per se* exclusionary rule, whereby all such testimony is to be excluded even where one or both of the spouses undertake(s) to waive it for the purpose of testifying to the circumstances surrounding an alleged fraudulent conveyance. *Crane & Co. v. Hall* (1919), 141 Tenn. 556, 562–563(4), (5), 213 S.W. 414. Somewhat incongruously, a section of the Tennessee Court of Appeals reiterated the rule of *Crane & Co., supra,* two decades afterward but then proceeded to rule that, since the plaintiff therein had discovered the spousal defendants concerning the circumstances surrounding an alleged fraudulent conveyance, the plaintiff could not object to the answers received. *Union Bank v. Chaffin,* (1940), 24 Tenn.App. 528, 534 [6], 147 S.W.2d 414. The latter decision of an intermediate Tennessee Court cannot be deemed a modification of the *per se* exclusionary rule.

In civil actions where jurisdiction is grounded on diversity of citizenship and the requisite matter in controversy, " * * * federal courts must apply the law of the State as pronounced by its highest court. * * * " *Troutman v. State Farm Fire & Cas. Co.,* C.A. 6th (1978), 570 F.2d 658, 659. As Chief Judge Phillips stated therein:

> \*　　\*　　\*　　\*　　\*　　\*

> That 70 years have passed since the *Appel [v. Cooper Insurance Co.,* 76 Ohio St. 52, 80 N.E. 955 (1970)] decision was rendered does not lessen its vitality. In *Ann Arbor Trust Co. v. North American Company for Life & Health Insurance,* 527 F.2d 526 (6th Cir. 1975), *cert. denied,* 425 U.S. 993, 96 S.Ct. 2206, 48 L.Ed.2d 818 (1976), also a diversity case, this court followed decisions of the Supreme Court

of Michigan decided in 1904, 1892, 1889 and 1876.

> In 1956, the United States Supreme Court held that a 1910 Vermont decision was controlling in a diversity case. The Court stated:

> > [T]here appears to be no confusion in the Vermont decisions, no developing line of authorities that casts a shadow over the established ones, no dicta, doubts or ambiguities in the opinions of Vermont judges on the question, no legislative development that promises to undermine the pudicial [sic: judicial] rule.

> *Bernhardt v. Polygraphic Co. of America, Inc.,* 350 U.S. 198, 205, 76 S.Ct. 273, 277, 100 L.Ed. 199 (1956). * * * [N]o reason is presented to this court to indicate that the Supreme Court of Ohio, if it were deciding this question today, would not follow its earlier opinion in *Appel.* See *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967).

*Ibid.,* 570 F.2d at 659. *Bosch, supra,* may be read as authority for the proposition that, where the highest court of a state has spoken on a point, a determination of a question of state law by any lower court of that state, as to an underlying issue of state law, is not controlling. *Commissioner v. Bosch, supra,* 387 U.S. 456, 465–466, 87 S.Ct. 1776, 1782–1783, 18 L.Ed.2d 886, 893–894[11]. Thus, the testimony of Mr. and Mrs. Auer along this line may not be, and is not, considered by the Court.

■ There is a second matter requiring attention before a consideration of the merits. The Court excluded exhibits nos. 19–21, inclusive, and 23 on the objection of the defendants Mr. and Mrs. Auer as not having been presented in accordance with the practice in this district and division relating to late exhibits.[1] It was not made to ap-

---

1. Late exhibits are those which are not offered at the pretrial conference. Under our practice, if late exhibits are initialed by all adversary counsel, this constitutes a stipulation of the authenticity and admissibility in evidence thereof, provided same are presented physical-ly to, and marked as such, by the clerk. Thereunder, if an adverse counsel declines to initial a late exhibit, it is to be brought to the attention of the Court for a ruling on its admissibility well in advance of the trial. Documents exhib-

pear at trial to the Court clearly that counsel for Mr. and Mrs. Auer had, in effect, agreed theretofore to the admission of exhibits nos. 19–21, inclusive. To prevent a manifest injustice, Rule 16, Federal Rules of Civil Procedure, the pretrial order of November 3, 1977, VI (a), hereby is SUPPLEMENTED, and the latter-designated exhibits are admitted into evidence. The same motion, as it relates to exhibit no. 23, hereby is DENIED.

■ Any conveyance is fraudulent if the fair salable value of the conveyor's assets is less than the amount necessary to pay his liabilities on his absolute liabilities as they mature. Uniform Fraudulent Conveyance Act, T.C.A. §§ 64–301, et seq. Interspousal conveyances are fraudulent *prima facie* when the conveying spouse is in financial difficulty and are fraudulent if they are made with actual intent to hinder, delay or defraud the conveyor's creditors. T.C.A. § 64–315.

■ Pretermitting all other issues, this adjudication must rest upon a determination of whether the plaintiff was prejudiced by the allegedly fraudulent interspousal conveyance between Mr. and Mrs. Auer. Such a showing is necessary to support a claim that a fraudulent conveyance should be set aside. *Marsh v. Galbraith*, (1948), 31 Tenn.App. 482, 487[3], 216 S.W.2d 968, certiorari denied (1949).

It is stipulated that, prior to the conveyance in question, Mr. and Mrs. Auer held the subject property as tenants by the entirety, and that Mr. Auer conveyed his interest therein as a tenant by the entirety to Mrs. Auer. Until such conveyance, these defendants held the subject property " * * * by the entireties * * * " and only upon the death of either would the survivor have taken the entire and absolute estate in it. *Chambers v. Chambers* (1893), 92 Tenn. 707, 713, 23 S.W. 67. If this conveyance were set aside as fraudulent, if the plaintiff levied upon Mr. Auer's interest therein as a tenant by the entirety, and if the plaintiff

sold that interest, the purchaser at that execution sale could acquire no other or greater interest than was vested in Mr. Auer. *Weaks v. Gress* (1971), 225 Tenn. 593, 597, 474 S.W.2d 424, citing and quoting from *Ames v. Norman* (1857), 36 Tenn. 683.[2]

■ The value of the estate of Mr. Auer in the subject property on June 8, 1972 was inconsequential; indeed, a real estate appraiser deemed that estate to have at the pertinent time no monetary value at all, in fact a negative value. Accordingly, there was no showing by the plaintiff that the interspousal conveyance from Mr. Auer to Mrs. Auer deprived the plaintiff of its right to subject the estate conveyed by Mr. Auer to the payment by him of his sizeable debt to the plaintiff. *Cf. Hamilton v. Gleaves*, (1958), 44 Tenn.App. 642, 657[4], 316 S.W.2d 335, certiorari denied (1958). In consequence, there was no showing by the plaintiff of prejudice to it. *Marsh v. Galbraith, supra.*

It results that the plaintiff hereby is DENIED all relief herein. Rule 58(1), Federal Rules of Civil Procedure.

## ON MOTION TO AMEND AND FOR ADDITIONAL FINDINGS

The plaintiff and the defendant Richland Trust Company, each, moved the Court in timely fashion to amend its findings of fact herein, to make additional such findings, and to amend its judgment herein of May 2, 1978 in accordance therewith. Rule 52(b), Federal Rules of Civil Procedure. The thrust of each such motion urges the Court to change its decision herein so as to grant the plaintiff the relief it had sought. The motions lack merit.

The Court found that the plaintiff had failed to show any prejudice or injury to it from the interspousal conveyance of June 8, 1972 from the defendant Mr. Auer to his wife, the defendant Mrs. Auer. Memorandum opinion and order herein of May 2, 1978. It was therefore concluded that the

---

ited with depositions are not thereby admitted as exhibits in lawsuits.

**2.** Relied upon in the plaintiff's brief.

plaintiff was not entitled to have such conveyance set aside as fraudulent, and all relief was denied. *Idem.* Such result was based, *inter alia*, upon the decision of the Court of Appeals of Tennessee in *Marsh v. Galbraith*, (1949), 31 Tenn.App. 482, 216 S.W.2d 968, certiorari denied (1949). It was incumbent upon this federal Court to follow the decision of such intermediate appellate court unless it was convinced that the Tennessee Supreme Court had decided, or would decide, differently. *Ruth v. Bituminous Casualty Corporation*, C.A. 6th (1970), 427 F.2d 290, 292 [1–3]. This Court was not, and is not now, so convinced.

The principles followed in *Marsh v. Galbraith, supra,* seem well settled. " * * * In order that a conveyance or transfer may be attacked as being fraudulent and void as against creditors, it is necessary, even where there is an actual fraudulent intent, that prejudice to the rights of creditors shall result therefrom, for fraud does not consist in mere intent but in intent acted out and resulting in injury. [Footnote reference omitted.] * * * " 37 C.J.S. 905–906, Fraudulent Conveyances § 61. Thus, " * * * it has generally been held that the courts will not treat as fraudulent voluntary transfers of property having no value at all or trivial value; [and] accordingly, despite a few contrary holdings, a conveyance. of any equity in land which is of little or no value is deemed not injurious to creditors of the transferor and will not be set aside as fraudulent. [Footnote reference omitted.] * * * " *Ibid.*, 37 C.J.S. at 857, § 10. The plaintiff having failed to show herein that the property transferred by Mr. Auer had other than an inconsequential value at the time of its conveyance to Mrs. Auer, it has not " * * * suffered any injury of which [it] can complain.* * * " *Marsh v. Galbraith, supra,* 216 S.W.2d at 970.

Neither is it appropriate for the Court to make additional findings of fact herein. The Court was only required to make such findings " * * * sufficient to indicate the factual basis for the ultimate conclusion, * * * " *Kelley v. Everglades Drainage District* (1943), 319 U.S. 415, 422, 63 S.Ct. 1141, 1145 [11], 87 L.Ed. 1485; and it was not necessary for it to have made findings on issues the decision of which was unnecessary to the ultimate result reached, *Immigration & Naturalization Serv. v. Bagamasbad* (1976), 429 U.S. 24, 25, 97 S.Ct. 200, 201 [1], 50 L.Ed.2d 190.

The foregoing motions hereby are each DENIED.